862 So.2d 1172 (2003)
Freida B. LONGORIA, Plaintiff-Appellee,
v.
BROOKSHIRE GROCERY COMPANY, Defendant-Appellant.
No. 37,975-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2003.
*1174 Rountree, Cox, Guin & Achee by Dale G. Cox, Shreveport, Counsel for Appellant.
Watson, McMillin & Harrison, by David Carlton McMillin, Monroe, Counsel for Appellee.
Before CARAWAY, PEATROSS and LOLLEY, JJ.
CARAWAY, J.
This worker's compensation case involves a claim for medical expenses for a back injury which occurred in 1992. In 1995, the claimant began receiving pain management treatment involving trigger point injections and narcotic medications. The claimant and her medical providers presented evidence that this treatment allowed *1175 her to remain employed and function without the pain she previously experienced. Although the employer initially made payments for the pain management treatments, it discontinued payments after four years following an independent review of the claimant's condition by a neurosurgeon. Following a trial, the worker's compensation judge ("WCJ") ruled that the employer's discontinuance of medical payments was inappropriate and rendered judgment in favor of claimant for the payment of medical benefits, penalties, and attorney's fees. From our review of the medical record in this case, we amend the WCJ's ruling to delete the award of a $500 penalty and to provide for legal interest from the date of judgment and trial costs, and as amended, we affirm the judgment.

Facts
This claim originally arose in November, 1992, when Freida Longoria sustained a mid-dorsal muscle strain while working as a cashier at Brookshire Grocery Company's ("Brookshire") store in Natchitoches. She was injured at her register while lifting three 2-liter coke bottles and turning to put them in a shopping cart. She felt sharp pain and "went to her knees." The pain was so severe, she thought she was having a heart attack. Within minutes someone relieved her, and after resting briefly in the store's break room, she went to the hospital where she was admitted. Eventually, she was diagnosed with a dorsal strain/sprain centered at T-T facet joint (R).
Longoria previously sued Brookshire in 1994 for supplemental earnings benefits, temporary total disability benefits, additional medical expenses for mental injury, attorney's fees and penalties. These issues were tried in May, 1995, and judgment was rendered in favor of Brookshire, dismissing her claims. The WCJ found that Ms. Longoria failed to prove that a mental injury resulted from the physical injury sustained in the November 7, 1992 accident. The court also determined that Brookshire had paid all of Ms. Longoria's medical expenses in connection with her workplace injury since the date of the accident,[1] except for those medical expenses related to the mental injury she alleged. Although Longoria had initially been paid wage benefits through October 1994, Longoria was denied additional wage benefits. By virtue of her graduation from college with a degree in accounting, Longoria was able to maintain sufficient employment despite her back pain.
From the onset of the injury, Longoria sought treatment for her significant pain from orthopedic and other physicians and from mental health care providers. Beginning in 1995, she has been treated with success by a pain management specialist, Dr. John Ledbetter. The treatment consists of administering trigger point injections for symptomatic pain relief, and prescribing narcotic analgesics and muscle relaxers. Longoria testified that she usually obtains trigger point injections about every six weeks, although when the therapeutic effects last longer, she sometimes waits for up to three months between injections.
Dr. Ledbetter initially referred Longoria to Dr. Charles Aprill, a New Orleans radiologist and diagnostician, in 1997. His assessment consisted of dorsal discography at T-T, right-sided facet injection and a post injection CT scan, and his report concluded that Longoria had a lower third dorsal sprain centered at the T-T facet *1176 joint on the right. Several months later, Longoria was evaluated, again by referral from Dr. Ledbetter, by Dr. Paul Dreyfuss. Dr. Dreyfuss was a spine specialist at the East Texas Medical Center Neurological Institute and board certified in physical medicine and rehabilitation. He performed a thoracic facet injection, but discontinued a planned costotransverse joint injection because during the procedure, Longoria experienced substantial pain. The doctor's notes indicate that she cried during the procedure, even though she was under "IV conscious sedation." A couple of months later, Dr. Dreyfuss performed a thoracic medial branch neurotomy, and Longoria's pain symptoms began to gradually improve. Dr. Dreyfuss recommended repeating trigger point injections through Dr. Ledbetter for follow-up pain relief.
By letter dated February 16, 2000, Brookshire's risk manager, Eddie Crawford, advised Longoria that Brookshire would no longer pay for trigger point injections and pain medication. Brookshire based its action on an independent medical examination it obtained from HealthSouth Evaluation Center, in which a neurosurgeon, Dr. Donald R. Smith, recommended that no further active treatment or procedures be performed. Dr. Smith found that there was "no objective evidence that would indicate that chronic long-term trigger point injections are an effective treatment." Further, he opined that Longoria had reached maximum medical improvement with regard to her injury.
On August 15, 2000, Longoria filed this claim for the medical treatment recommended by Dr. Ledbetter. Brookshire answered, denying Longoria's claim. Following trial, the trial court ruled in favor of Longoria and ordered that Brookshire reinstate payment for medical treatment and prescription drugs. The trial court found insufficient evidence under which it could allow Dr. Ledbetter's treatment to be terminated. It ordered that Longoria be reimbursed for trigger point injection therapy ($3,232.03) and pharmaceutical expenses ($2,241.61) incurred during the period for which these benefits were terminated. Thereafter, the trial court assessed a $500.00 penalty for Brookshire's failure to pay her claim for prescription drugs. It declined to assess a penalty for its nonpayment of Dr. Ledbetter's treatment because it found that Dr. Smith's report provided Brookshire with a reasonable basis under which it could have terminated the trigger point injections. The trial court awarded Longoria attorney fees in the amount of $5,500 and assessed all costs to Brookshire. Brookshire suspensively appeals the trial court's judgment dated March 24, 2003.

Discussion
Initially, through three assignments of error, Brookshire contests the relationship between Longoria's pain which Dr. Ledbetter began treating in 1995 and the alleged November 7, 1992 accident. Since Longoria is the primary witness who relates the 1992 accident as the cause of her continued pain, Brookshire's argument emphasizes Longoria's reports of back pain prior to the accident and the conflicting histories she provided to various doctors and mental health providers, all of which were the subject of the first suit between the parties. Brookshire argues that such comprehensive review of Longoria's total medical history destroys her credibility.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. Figueroa v. Hardtner Medical Ctr., 35,678 (La.App.2d Cir.1/25/02), 805 So.2d 1267; Martin v. Davison Transport, Inc., 35,129 (La.App.2d Cir.9/28/01), 796 So.2d 753, rev'd on other grounds, 01-3143 *1177 (La.2/22/02), 810 So.2d 1103. Even though an appellate court may feel its own evaluation and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Williams v. Wal-Mart Stores, Inc., 00-1347 (La.App. 1st Cir.9/28/01), 809 So.2d 294 (citing Stobart v. State, Dep't of Transp. & Dev., 617 So.2d 880 (La.1993)).
In order for a claimant to be entitled to recover workers' compensation benefits, he must prove by a preponderance of the evidence that a work-related accident occurred and that an injury was sustained. A claimant's testimony alone may be sufficient to discharge this burden ofproof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Williams v. Wal-Mart Stores, Inc., supra. Corroboration of the worker's testimony may be provided by medical evidence. See, Bruno v. Harbert, supra. Thus, in determining whether a worker has satisfied this burden, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. Williams v. Wal-Mart Stores, Inc., supra. The trial court's determination as to whether the worker's testimony is credible and whether the worker has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno v. Harbert, supra.
Although Brookshire emphasizes in its argument Longoria's reports of back pain during the three weeks before her November 7, 1992 accident, we do not find that the issue of a work-related accident has been specifically disputed by Brookshire. From the issues set forth in the WCJ's first ruling in 1995 and those described in Brookshire's pre-trial statement from this case, the WCJ was never called upon by the defense to determine that a work-related accident did not occur. Therefore, the case as presented in both trials concerns a work-related dorsal spine strain for which Longoria was initially hospitalized for two days following the accident.
Brookshire nevertheless rehashes in its arguments the opinions of the orthopedic surgeons and the psychiatrists and other mental health counselors who treated Longoria between 1992 and 1995. Those opinions, as fully reviewed by the WCJ in the 1995 ruling, reflected the puzzlement of the medical experts concerning Longoria's continued complaint of severe pain and questioned whether the discrepancy in the level of pain normally expected from her otherwise modest injury could account for her depression and other psychological problems or vice versa. Brookshire in essence turns Longoria's arguments for an alleged mental injury in the first case into evidence of Longoria's lack of credibility for the establishment of continued pain from the initial 1992 accident.
The same WCJ that considered the expert medical testimony and rendered a ruling in Brookshire's favor in 1995, heard the evidence from Dr. Ledbetter in this case and ruled as follows:
It is undisputed that claimant received extensive medical treatment as the result of her 1992 injury. Said medical treatment lead (sic) to an ultimate referral *1178 from Dr. Myron Bailey to Dr. John Ledbetter. Dr. Bailey indicates the referral was made to Dr. Ledbetter because of the unsatisfactory results claimant was receiving from other medical treatment she received.
According to Dr. Ledbetter, upon his initial examination of claimant on June 29th, 1995, and since that time, he has noted "true muscle spasms and hypertrophy of the paraspinous musculature." He considered "true muscle spasms" to be an objective finding. He noted the muscle spasm as localized to the midthoracic paraspinous musculature, particularly on the right.
Another objective finding noted by Dr. Ledbetter was hypertrophy or enlargement of the muscles from being tight on a regular basis.
His diagnosis was myofascial pain with trigger point in the right thoracic paravertebral muscles; also depression and anxiety. He noted claimant's source of pain as the facet joint. He felt claimant's pain resulted from her 1992 injury.
When questioned concerning the extensive period of time claimant has required his services, Dr. Ledbetter noted "these things can go on for years; they can go on indefinitely." He noted that the extensive treatment did not result in his questioning the cause of claimant's complaints.
During claimant's last visit with Dr. Ledbetter on July 2nd, 2001, she was diagnosed with chronic myofascial pain and trigger points involving the thoracic multifidus musculature. His prognosis was fair to guarded.
Dr. Ledbetter found that claimant responds to the injections and it enables her to live and to work. The usual length or duration of the treatment is four to six weeks.
When questioned concerning the presence of any psychological components to claimant's complaints, Dr. Ledbetter noted that there is a psychological component to most people who have pain like claimant. He noted it is depressing and stressful with resulting anxiety. He found claimant's problem is not a psychological etiologybut a physical problem that causes secondary depression.
From our review of the medical reports and testimony of the doctors who began pain management treatment after the first trial, we cannot determine that the WCJ was unreasonable in the conclusion that Dr. Ledbetter's continued treatment was necessary. Dr. Ledbetter reported objective signs of the physiological source of Longoria's continued pain, and the WCJ could find that Longoria's reporting of continued pain was credible. Accordingly, we find no manifest error in the WCJ's ruling.
Next, Brookshire argues that the WCJ erred in giving more weight to the testimony of Dr. Ledbetter than it did the testimony of Dr. Smith and the orthopedic specialists who treated Longoria before 1995. In the ruling, the WCJ stated that the "[j]urisprudence has held that the treating physician is entitled to greater weight than the testimony of a physician who examines the patient for opinion purposes only."
Brookshire cites Graham v. Georgia-Pacific Corp., 26-165 (La.App.2d Cir.9/23/94), 643 So.2d 352 to support its argument that the testimony of its three specialists (a neurosurgeon and two orthopedic surgeons) is entitled to greater weight than that of Dr. Ledbetter, the treating physician, when the issue concerns the particular field of the specialist. Nevertheless, we note that the American Board of Anesthesiologists has certified Dr. Ledbetter in both the specialty of anesthesiology and the subspecialty of pain *1179 management. The American Board of Pain Management has certified him in the specialty of pain management.
Our court has generally followed the jurisprudential rule that a treating physician's opinion is given more weight than a non-treating physician. McCray v. Delta Indus., Inc., 00-1694 (La.App.2d Cir.9/28/01), 809 So.2d 265. However, as noted in McKinney v. Coleman, 36,958 (La.App.2d Cir.3/14/03), 839 So.2d 1240, and addressed recently by the Supreme Court in Miller v. Clout, 03-91 (La.10/21/03), 857 So.2d 458, courts applying that doctrine have held that the treating physician's testimony is not irrebuttable, as the trier-of-fact is required to weigh the testimony of all of the medical witnesses. Miller v. Clout, supra, footnote 3, citing Freeman v. Rew, 557 So.2d 748 (La.App. 2d Cir.1990). In Freeman v. Rew, this court also noted that the weight afforded a treating physician's testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based.
From our review of the jurisprudence, particularly the recent decision in Miller, neither the "rule" or "doctrine" expressed by the WCJ, nor the "rule" urged by Brookshire controls absolutely in a given case. There can be competing reasonable views of the medical evidence from which the trier-of-fact may choose, regardless of whether the evidence involves the opinion of a specialist or the treating physician. The deference, therefore, to be afforded by the appellate court must be based upon the manifest error doctrine. Brookshire's insistence that a fatal trial error occurred by the misapplication of a weight factor or rule is therefore incorrect. For the reasons set forth above in our discussion of Brookshire's argument for manifest error, the WCJ clearly has reviewed and weighed all of the medical testimony in the two trials of this matter. The reasons for the WCJ's acceptance of Dr. Ledbetter's conclusion was not the result of the application of a rigid rule under which the WCJ chose one doctor's unsubstantiated testimony over that of another. This assignment of error therefore has no merit.
Brookshire next claims that the WCJ ignored the rule of La. R.S. 23:1204 and effectively treated Brookshire's five-year payments of medical benefits for Dr. Ledbetter's services as an admission of liability for Longoria's pain management treatment. La. R.S. 23:1204 provides:
Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Chapter.
In support of its argument, Brookshire cites the cross-examination at trial of its risk manager concerning Brookshire's payments for Dr. Ledbetter's treatment. No contemporaneous objection to that line of questioning was made. At one point in the questioning, the WCJ cautioned the witness to answer yes or no before explaining his answer. The WCJ then repeated the question which arguably was irrelevant in view of the statute. Such action on the part of the WCJ did not pertain to the ultimate ruling of the court, and a review of that seven-page ruling indicates no violation of the statute. Accordingly, this assignment of error lacks merit.
Finally, Brookshire contests the award of penalties and attorney's fees in this case under the Workers' Compensation Act. Sections 1201 and 1201.2 of the Act provide for penalties under different circumstances. La. R.S. 23:1201 and 1201.2.[2]Williams v. Rush Masonry, *1180 Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885. Section 1201 involves the employer's failure to timely commence payment of benefits, while Section 1201.2 involves the employer's discontinuance of benefits after timely commencement. Section 1201 applies penalties to employers and insurers alike, while Section 1201.2's penalty provision incorporates the penalties of La. R.S. 22:658 applicable only to insurers, and not self-insured employers. See Williams v. Rush Masonry, supra. Section 1201's test for its penalties and attorney's fees depends upon whether the employer has "reasonably controverted" the claim, while Section 1201.2 imposes its attorney's fee penalty upon the employer whose "discontinuance [of benefits] is found to be arbitrary, capricious and without probable cause." As explained in Brown, "[u]nreasonably controverting a claim ... requires action of a less egregious nature than that required for arbitrary and capricious behavior." Id. at 890.
From our review of Brown and Williams v. Rush Masonry, which sorted out how these two penalty provisions of the Act apply, we find that the present situation, analogous to the one addressed in Williams v. Rush Masonry, requires the application of Section 1201.2 to address a self-insured employer's discontinuance of payments of medical benefits. To the contrary, the WCJ's ruling measured Brookshire's conduct under the reasonable controversy standard of Section 1201, and the $500 penalty awarded has no application to Brookshire under Section 1201.2.
Although the Workers' Compensation Act is liberally construed with regard to benefits, penal statutes are strictly construed. Williams v. Rush Masonry, supra. Arbitrary and capricious behavior consists of willful and unreasonable action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. Reed v. State Farm Mutual Auto. Ins. Co., 03-107 (La.10/21/03), 857 So.2d 1012. Whether or not a refusal to pay is arbitrary, capricious or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Reed v. State Farm, supra; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991). The crucial inquiry is whether the employer has articulable and objective reasons for denying or discontinuing benefits at the time it took that action. Authement v. Wal-Mart, 02-2434 (La.App. 1st Cir.9/26/03), 857 So.2d 564.
As indicated above, the WCJ employed the reasonable controversy standard in testing whether penalties apply. The court found a "reasonable basis" for the termination of the trigger point injections based upon Dr. Smith's report, but no reasonable basis for the discontinuance of Longoria's other medications. Brookshire argues that this inconsistent ruling results from a narrow reading of Dr. Smith's report. We agree that the WCJ's ruling rests upon a misplaced distinction and, as indicated above, fails to employ the arbitrary and capricious standard. Nevertheless, an appellate court reviews judgments and not reasons for judgment. Hoskins v. Hoskins, 36,031 (La.App.2d Cir.4/5/02), 814 So.2d 773.
When we review the termination of the employee's medical benefits in this case, we find that the process employed by Brookshire was arbitrary and capricious. At the time of Brookshire's discontinuance *1181 of payments, the pain management treatments of Longoria had been ongoing for over four years. Longoria was employed and her mental health had improved greatly since the 1995 trial. Brookshire's risk manager's testimony indicates that the decision to end the pain management treatment occurred without consultation with Dr. Ledbetter. Under these circumstances, the judgment of the WCJ can be affirmed insofar as it awarded attorney's fees. Pursuant to Section 1201.2, however, the award of $500 was unauthorized and is deleted from the judgment.
By her answer to the appeal, Longoria requests an additional award of reasonable attorney's fees for appeal, legal interest on the judgment awards granted by the WCJ, and costs associated with trial. An increase is appropriate when the defendant appeals, obtains no relief, and the appeal has necessitated additional work for plaintiff's counsel, provided the plaintiff properly requests the increase. Nowlin v. Breck Construction Co., 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112; Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1st Cir.1989), writ denied, 553 So.2d 466 (La.1989). Under the circumstances, an increase in the attorney fee award of $1500 is appropriate. Additionally, legal interest is hereby granted from date of judgment for the amounts awarded by the WCJ. Costs associated with the trial are assessed against appellant pursuant to La. C.C.P. art. 1920. The decree will be amended accordingly.

Conclusion
The award of a $500 penalty is reversed and deleted from the judgment. The judgment is further amended to provide for legal interest from date of judgment and costs in accordance with La. C.C.P. art. 1920. Costs of appeal are assessed to appellant.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
PEATROSS, J., dissents in part with written reasons.
PEATROSS, J., dissenting in part.
I respectfully disagree with the majority opinion only insofar as it affirms the attorney fees awarded to Longoria. In workers' compensation cases, attorney fees should only be imposed when the facts clearly negate good faith and just cause in terminating benefits. See Harris v. Bancroft Bag, Inc., 30,431 (La.App.2d Cir.4/9/98), 714 So.2d 44; Nunn v. CBC Services, Inc., 32,491 (La.App.2d Cir.1/26/00), 750 So.2d 474. A claim is reasonably controverted when the employer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Nunn, supra. If there is conflicting medical evidence, an employer is not arbitrary or capricious in reaching its decision to deny or terminate benefits. Sisco v. Liberty Mutual Insurance Company, 153 So.2d 216 (La.App. 2d Cir.1963).
I believe that Brookshire had articulable and objective reasons for discontinuing its benefits to Longoria at the time it took that action. After examining Longoria, Dr. Smith found that no further active treatment or procedures should be performed on her because she had reached maximum medical improvement with regard to her injury and there was "no objective evidence that would indicate that chronic long-term trigger point injections are an effective treatment." Dr. Smith's finding is conflicting medical evidence. Arguably, it reasonably countered Longoria's medical evidence. Brooskhire used this evidence to terminate Longoria's benefits. Brookshire's termination of the medical benefits was not arbitrary and capricious; *1182 and, therefore, I would reverse the WCJ's award of attorney fees to Longoria.
NOTES
[1] Brookshire paid medical expenses totaling $14,919.96 between 1992 and the 1995 trial; thereafter, it continued to pay Ms. Longoria's medical expenses, totaling $53,000.00, until discontinuing payment in late January, 2000.
[2] La. R.S. 23:1201.2 was repealed by Act No. 1204 of the Regular Session of 2003, approved July 3, 2003, effective August 15, 2003, and the new provisions, designated as La. R.S. 23:1201(I) and (J) have been substituted therefor.