hPEATROSS, J.
In this workers’ compensation action, the employer, Louisiana Plastic Industries, Inc. (“LPI”), appeals the Workers’ Compensation Judge’s (“WCJ”) ruling allowing the claimant, Kenneth Thornton, to undergo a lumbar surgical procedure performed at the employer’s expense.[1] For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Mr. Thorton, a 53-year-old truck driver employed by LPI, suffered a back injury when he fell from the hood of his truck while attempting to wash it at the Ryder Truck Rental facility in Monroe. LPI leases all of its trucks through Ryder. The accident occurred on July 24, 2002, and Mr. Thornton was first seen by Dr. Myron Bailey, a Monroe orthopaedist, on July 30, 2002. Dr. Bailey was familiar with Mr. Thornton, as he had experienced some intermittent back pain from a previous accident in 1997.
Following this initial examination by Dr. Bailey, where x-rays revealed marked changes of the L4 disc space, a lumbar MRI was recommended. When Mr. Thornton and his wife presented to Dr. Bailey on August 8, 2002, to discuss the findings of the MRI, which showed significant L4 disc pathology with joint space narrowing and slight bulging, Dr. Bailey’s recommendation at that time was treatment by the Pain Management Clinic, and, if that was unhelpful, surgical intervention. *1228 Dr. Bailey explained that the surgery would be a fusion at the L4-5 level which would be quite a significant operation with an end result not totally | ¿predictable. After an extensive discussion between Dr. Bailey and Mr. Thornton and his wife, Mr. Thornton desired to proceed with surgical intervention rather than injection management by the Pain Management Clinic.
On August 23, 2002, Mr. Thornton filed a disputed claim for compensation and sought temporary total disability benefits and medical benefits including surgery. LPI soon began paying Mr. Thornton temporary total disability benefits and medical benefits, but the issue of surgery for his back remained unresolved.
Following receipt by Mr. Thornton’s attorney of Dr. Bailey’s report with a request to schedule surgery, LPI obtained a second opinion from another Monroe or-thopaedist, Dr. Doug Brown, who saw Mr. Thornton on September 9, 2002. Dr. Brown noted advanced degenerative L4-5 disc that was pre-existing and a possible hairline compression of the L4 vertebra. Dr. Brown recommended at least six additional weeks of vigorous physical therapy with a bone scan to clarify any other bony pathology. Dr. Brown further opined that Mr. Thornton’s problem preexisted the injury and that his current condition was a direct result of progressive deterioration since 1997. Dr. Brown concluded that he would not opt for surgery until Mr. Thornton had completed a full three months of physical therapy and that he should also be on a weight loss and cardiovascular program. Dr. Brown noted Mr. Thornton’s weight to be 280 pounds on the date of his examination.
13At this point, due to the disparity of medical opinions, the WCJ ordered an independent medical examination, which was conducted on November 20, 2002, by Dr. Robert Holladay, a Shreveport' orthopae-dist. Noting Mr. Thornton’s complaints of low-back pain and pain in the hip and buttocks area, he also noted no radicular complaints in the lower extremities, nor any numbness or dragging. Dr. Holladay did note, however, that Mr. Thornton complained of leg pain radiating into his foot on occasion. Dr. Holladay reviewed the x-rays of July 30, 2002, together with the lumbar MRI and indicated no disagreement with the interpretations therefrom. Diagnosing Mr. Thornton with chronic degenerative disc disease at L4-L5 with low back pain, Dr. Holladay recommended against surgical intervention, noting no evidence of radicular type complaints or findings. He did not anticipate that a major surgical procedure such as the one suggested by Dr. Bailey would relieve all of Mr. Thornton’s symptoms. Dr. Holladay recommended aggressive physical therapy, including a pool therapy-type rehabilitation program. He further opined that Mr. Thornton would benefit from pain management with some bilateral facet injections and possibly also from an epidural steroid injection. Finally, Dr. Holladay noted that a weight-loss program for Mr. Thornton would also benefit his lower back. At this time Dr. Holladay noted Mr. Thornton to weigh 277 pounds.
The first hearing before the WCJ took place on April 24, 2003. Following that hearing, the WCJ denied the surgery based on Dr. Holladay’s | Recommendation for Mr. Thornton to undergo physical therapy, making the following statement to Mr. Thornton:
... Now, Mr. Thornton, I realize that you’re hurting. I realized you want some immediate relief. Believe me, I do understand you. What I’m going to ask you to do is go to physical therapy. Try this pool therapy. Give it your best shot, and hopefully it will help you out. Even if it doesn’t eliminate your pain, I’m of the opinion — I’m not a doctor, but I’m of the opinion that at least it may *1229 strengthen parts of your body to make you better susceptible to surgery if it’s still needed. But my grandmother used to say, “Nothing beats a failure but a try.” So try this therapy. You’ve got two good doctors. As far as I know, they’re good doctors. All three of them are. They’re good doctors. Two of them are feeling like you need to try this before getting to the point of surgery. So give it your best shot, and I’m sure that if it doesn’t work, [your attorney] will be right back in here if [LPI’s counsel] doesn’t cooperate.” ... So, don’t feel like you’ve lost today.
After this ruling, Mr. Thornton completed five weeks of physical therapy. Thereafter, on September 4, 2003, Mr. Thornton’s counsel filed a rule for surgery, again requesting that LPI be ordered to pay for the surgery recommended by Dr. Bailey. At a brief hearing conducted by the WCJ on October 2, 2003, the WCJ denied the rule pending Mr. Thornton’s re-examination by Dr. Holladay, which took place on November 19, nearly one year from the day from Dr. Holladay’s first examination of Mr. Thornton.
In his report of the November 19th examination, Dr. Holladay noted that, since the last office visit, Mr. Thornton had undergone out-patient physical therapy for five weeks that had yielded no relief. Mr. Thornton continued to complain of pain across the lower back into the left buttock and upper left thigh, but with no lower leg pain numbness or tingling. Dr. Holladay noted in the course of this examination that, at this time, Mr. Thornton weighed 260 pounds, some 17 pounds less than one year | Rpreviously. Dr. Holladay noted pain in the back left hip and buttock area on the straight leg-raising test, but no lower leg pain. He further noted no evidence of atrophy in the lower extremities and that Mr. Thornton was able to get on and off of the examination table and in and out of a chair without difficulty or assistance and that he was able to walk without a limp. The diagnosis did not change from the previous examination, nor did Dr. Holla-day’s recommendation against surgery. Dr. Holladay emphasized that the diagnostic studies were essentially normal without physical findings of a radicular nature. He predicted the outcome of Mr. Thornton fully recovering from the contemplated surgical procedure to be very low, further opining an additional risk factor of this being a work-related injury lowering his chance of improvement from the fusion procedures.
The matter was heard again in January 2004 and, after reviewing Dr. Holladay’s report of the November 19th examination and hearing testimony from Mr. Thornton, the WCJ granted the request for surgery. This appeal ensued.

DISCUSSION

Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of review. Figueroa v. Hardtner Medical Ctr., 35,678 (La.App.2d Cir.1/25/02), 805 So.2d 1267. Under this standard, a court of appeal may not set aside a trial court’s or jury’s finding of fact unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court |fimay feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La. 1989), citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koekring, 283 So.2d 716 (La.1973).
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but, if the trial court or jury findings are *1230 reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra, citing Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what can be said. Canter, supra; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987); Boulos v. Morrison, 503 So.2d 1 (La.1987). When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility furnishes a reasonable factual basis for the trial court’s finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error. Edwards v. Sawyer Industrial Plastics, 99-2676 (La.6/30/00), 765 So.2d 328. The issue to be resolved by a reviewing 17court, therefore, is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1998).
In the case sub judice, LPI argues that the hearing officer incorrectly weighed the opinions of the three physicians who examined Mr. Thornton. First, it notes that the treating physician, Dr. Bailey, did not clearly recommend the surgery for Mr. Thornton, but, rather, ceded to Mr. Thornton’s strong desire to have the surgery. Second, Dr. Brown, who provided a second opinion to Dr. Bailey’s at the employer’s request, recommended against surgery. Finally, LPI emphasizes that Dr. Holladay, the orthopaedic surgeon appointed by the hearing officer to conduct an independent examination of Mr. Thornton, consistently recommended against surgery. LPI argues that the WCJ was clearly wrong in accepting only Dr. Bailey’s tenuous recommendation for surgery in light of the other two medical opinions to the contrary.
Mr. Thornton, on the other hand, argues that the WCJ utilized the proper standard in evaluating the evidence. He asserts that the WCJ looked not only at the medical evidence, but at Mr. Thornton’s testimony that he had made honest attempts at rehabilitation, including physical therapy, and had found no relief from his back pain. He urges that the WCJ was not clearly wrong in her conclusion to allow the surgery. We agree.
A review of the WCJ’s remarks when ruling indicates that she made credibility findings favorable to Mr. Thornton, whom she believed was sincerely interested in returning to the work force. The WCJ made a [ Rparticular finding in her oral reasons that she was basing her decision to allow the surgery on the recommendation of his treating physician, Dr. Bailey, and the fact that Dr. Doug Brown, whom the employer initially selected for a second opinion, did not say that surgery would not be necessary or that it would not assist him. Finally, the WCJ concluded that she looked at the totality of the evidence, including the lay testimony of the claimant and not just the medical evidence.
In McKinney v. Coleman, 36,958 (La. App.2d Cir.3/14/03), 839 So.2d 1240, this court noted that the general rule is that the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. La. R.S. 23:1123, however, provides as follows:
*1231 If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
In McKinney, supra, we explained the treatment by the hearing officer of the various examining and testifying physicians as follows:
Nevertheless, the opinion of the IME physician is not conclusive, and the WCJ must evaluate all of the evidence presented in making a decision as to the claimant’s condition. Jennings American Legion Hosp. v. Daigle, 01-621 (La. App. 3rd Cir-11/14/01), 801 So.2d 550, [writ denied, 01-3294 (La.9/5/03), 852 So.2d 1038]. The significant weight given to the opinion of the IME physician can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other relevant factors. Green v. Louisiana Coca Cola Bottling Co., Ltd., 477 So.2d 904 (La.App. 4th Cir.1985), writ denied, 478 So.2d 910 (La.1985).
Further, in Longoria v. Brookshire Grocery Company, 37,975 (La.App.2d Cir.12/19/03), 862 So.2d 1172, writ denied, 04-0157 (La.4/23/04) 870 So.2d 299, we stated that, while this court has generally followed the jurisprudential rule that a treating physician’s opinion is given more weight than a non-treating physician’s, courts applying that doctrine have held that the treating physician’s testimony is not irrebuttable, as the trier of fact is required to weigh the testimony of all of the medical witnesses. The inquiry is whether, based on the totality of the record, the fact finder was manifestly erroneous in accepting the expert testimony presented by defendants over that presented by the claimant. See Miller v. Clout, 03-0091 (La.10/21/03), 857 So.2d 458, fn. 3; and Aaron v. City of Shreveport, 38,172 (La.App.2d Cir.3/3/04), 867 So.2d 915.
The record in the case sub judice reveals that the WCJ followed Mr. Thornton’s case very closely and believed that the claimant had expended great effort at physical therapy to try to get better without surgical intervention, but that Mr. Thornton felt that surgery was the only likely avenue for his long-term recovery which might allow him to return to his work of long-haul truck driving. Specifically, in her first ruling on the surgery issue, the WCJ impressed upon Mr. Thornton that she understood his situation, but wanted him to try physical therapy before resorting to surgical intervention because two of the physicians believed that therapy was the appropriate route of treatment. The WCJ clearly left open the | ^possibility that surgery may well be necessary if the physical therapy did not satisfactorily relieve Mr. Thornton’s pain.
After five weeks of physical therapy, Mr. Thornton’s condition was not significantly improved. In this regard, the final notation in Dr. Bailey’s records, on July 23, 2003, states that Mr. Thornton “has been religious in carrying out his physical therapy ... has lost weight and feels as if his strength has improved ... still has a backache.” Despite the fact that Mr. Thornton’s condition was not improved, Dr. Holladay maintained that surgery was not his recommendation, but provided no alternative treatment plan. On the other hand, Dr. Bailey’s assessment of Mr. Thornton at that time was that “[e]ven though it has been the insistence of thirds *1232 (sic) parties involved that he not have additional management, i.e. surgery, I still feel that this is the only way he has an opportunity to improve.” He further noted that Mr. Thornton “totally agrees with this and he has been very faithful in carrying out this prolonged approach to no avail.”
In Longoria, supra, we explained:
There can be competing reasonable views of the medical evidence from which the trier-of-faet may choose, regardless of whether the evidence involves the opinion of a specialist or the treating physician. The deference, therefore, to be afforded by the appellate court must be based upon the manifest error doctrine.
The WCJ listened, reviewed and weighed all of the medical evidence on more than one occasion in this case. As previously stated, she initially ordered that Mr. Thornton attempt the more conservative treatment route before allowing surgical intervention, which he did willingly and diligently, but without success. Ultimately, the WCJ credited and accepted InMr. Thornton’s and Dr. Bailey’s testimony that the surgery was necessary for his improvement. Based on the totality of the record, we cannot say that the WCJ’s decision to accept this testimony over that of Dr. Brown and Dr. Holladay was manifestly erroneous.

CONCLUSION

For the foregoing reasons, the judgment of the Workers’ Compensation Judge allowing Kenneth Thornton to have the lumbar surgical procedure performed at Louisiana Plastic Industries, Inc.’s expense is affirmed. Costs of appeal are assessed against Louisiana Plastic Industries, Inc.
AFFIRMED.

. This matter came to this court initially on an application for supervisory writs, was remanded for perfection as an appeal and is now before us on the sole issue of the WCJ's decision granting the employee's request to have the surgical procedure performed.