911 So.2d 304 (2005)
Ronnie PUJOE, Plaintiff-Appellee
v.
STOWE-WOODARD, Defendant-Appellant.
No. 40,044-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
Rehearing Denied September 28, 2005.
*306 Mayer, Smith & Roberts, L.L.P. By Kim Purdy Thomas, Shreveport, for Appellant.
Leslie L. LaCroix, Jr., Monroe, for Appellee.
Before WILLIAMS, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
This appeal by employer Stowe-Woodward ("Stowe")[1] arises from an order of the Office of Workers' Compensation ("OWC") in favor of Ronnie Pujoe's ("Mr. Pujoe") continued "intensive therapy" and "deferring" judgment on several trial issues pending the outcome of said therapy. The order of the OWC has been the subject of a previous writ application to this court, which was denied,[2] and is also the subject of the attempted appeal, which was converted into a writ application by this court because the OWC's ruling was not an appealable judgment. This court granted the writ to review the propriety of the OWC's ruling in light of the entire record; and, for the reasons set forth herein, we now affirm.

FACTS
Ronnie Pujoe was employed by Stowe as a rubber mill operator. On October 22, 2002, Mr. Pujoe was lifting a bale of rubber when he slipped on a wet or oily spot on the floor and fell. Mr. Pujoe stated that he injured his neck and back as a result of this fall. After being treated and released at the hospital, Mr. Pujoe commenced treatment with a chiropractor and was paid temporary total disability benefits commencing on the date of the accident.
The chiropractic therapy was unsuccessful, so Mr. Pujoe sought treatment with Dr. Brian Bulloch, an orthopedic surgeon, on November 19, 2002. Dr. Bulloch's assessment of Mr. Pujoe was as follows:
Basically it appears as though Mr. Pujoe does have significant cervical, thoracic, and lumbar strains. He may also have a left upper extremity radiculopathy versus a compression neuropathy, possibly cubital tunnel syndrome and he seems to have also a left lower extremity radicular type pattern of pain.
Dr. Bulloch recommended that Liberty Mutual Insurance Company ("Liberty") authorize an MRI of Mr. Pujoe's cervical and lumbar spine and a neural exam of his left arm.
Mr. Pujoe underwent the MRI studies and neural exam in December 2002. The lumbar MRI revealed several lower back problems, including a "mild-moderate" herniation (extrusion of the inner core) at the L5-S1 vertebrae, a "moderate-severe" *307 stenosis (narrowing of the space between discs) at L5 and a bulging disc with "moderate" stenosis at L4-5. The study also found nerve root impingement at the L4 and L5 vertebrae. The cervical MRI revealed moderate spondylosis (degeneration) at C5-6 with "moderate" stenosis and a "tiny focus" of ischemia (restriction in blood flow) or myelomalacia (loss of material or softening), and similar but lesser changes at C6-7. The neural exam of Mr. Pujoe's left arm was normal.
Mr. Pujoe returned to see Dr. Bulloch after these studies. Dr. Bulloch confirmed the findings on the MRI; and, in particular, he observed stenosis at the C5-6 level with ischemia or myelomalacia at that point. Dr. Bulloch recommended that Mr. Pujoe undergo surgery, specifically a diskectomy at C5-6 and C6-7 and cervical fusion. The doctor opined that further lumbar surgery may also be required in the future. Dr. Bulloch restricted Mr. Pujoe from working pending surgery as of December 19, 2002.
Liberty did not approve Dr. Bulloch's recommendation for surgery. Instead, they sent him to see another orthopedic surgeon, Dr. Baer Rambach, in January 2003. Dr. Rambach's discussion of his findings stated, in part:
This patient has experienced an injury while working on the job on October 22, 2002. He does have some pre-existing degenerative arthritis and degenerative intervertebral disc disease in the cervical spine which may have been aggravated by the nature of the injuries he alleges to have sustained. He also sustained soft tissue injuries to the lumbrosacral area of the spine. Although he does have findings of some spinal stenosis and disc protrusions in the cervical and lumbrosacral regions of the spine, I do not find any strong clinical evidence of mechanical nerve root compression signs which would be consistent with a herniated intervertebral disc. His findings are more subjective than objective. Because of this, I would suggest that surgery be deferred and this patient be given some intensive physical therapy such as at the Ouachita Physical Therapy Center whom I have a lot of confidence in, in Monroe, Louisiana.
Dr. Rambach further recommended a series of epidural steroid injections if physical therapy did not produce the desired results. He stated that Mr. Pujoe could return to work at a sedentary or light duty job with temporary restrictions against bending, squatting, stooping, driving, operating dangerous machinery or climbing. Mr. Pujoe testified, however, that Stowe did not offer him a light duty job.
Mr. Pujoe returned to see Dr. Bulloch on January 29, 2003, with continued complaints of pain. He discussed Dr. Rambach's findings with Dr. Bulloch, and Dr. Bulloch agreed that an injection series in Mr. Pujoe's lumbar region "and other conservative management" could be beneficial, but restated his opinion that only surgery could correct the problems with Mr. Pujoe's cervical region. Dr. Bulloch reemphasized his opinion that Mr. Pujoe was not then capable of working.
Liberty did not approve physical therapy or an injection series; instead, they requested that Mr. Pujoe see a state independent medical examiner ("IME"). Orthopedic surgeon Dr. Douglas Brown was appointed in April 2003 and examined Mr. Pujoe.[3] Dr. Brown found "mild" degenerative changes in Mr. Pujoe's back at C4-5 *308 and C5-6, congenital lumbarization at S1, "previous" bulging of discs at C5-6 and C6-7, and "preexisting" spondylosis at C4-5. Dr. Brown's evaluation stated:
I think this man's condition is not commensurate with the need for surgery. His problems appear to be preexisting that may have been sympomatically aggravated by the accident of October 2002.
I think this man is fully capable of returning to work.
On June 19, 2003, Stowe wrote Mr. Pujoe a letter stating that Liberty had informed Stowe that he was "fully capable of returning to work." As a result of the letter, Stowe offered Mr. Pujoe his old job back. At that point Stowe and Liberty terminated Mr. Pujoe's workers' compensation benefits. Mr. Pujoe returned to work at Stowe as a painter, but continued to have back pain. When he took his pain medication to alleviate the pain, he became unable to work and this caused problems with his supervisor. On July 15, 2003, Mr. Pujoe was told that he should not work around the heavy machinery and a representative of Stowe told him to stop work and go home. Mr. Pujoe testified that, despite promises from the company, no one ever called him back to work.
On July 22, 2003, Mr. Pujoe returned to see Dr. Bulloch, who noted that he was "not sure that I have again a significant role in his care at this point because of how things have transpired." He again recommended cervical spine surgery and lumbar injection therapy and, again, recommended that Mr. Pujoe not work because that "would be a significant risk to him."
On July 31, 2003, Stowe wrote Mr. Pujoe another letter noting that he was ineligible for workers' compensation because Dr. Brown had released him to work. The letter informed Mr. Pujoe that he might be entitled to short-term disability through Stowe if he so requested; however, if the claim was denied, Stowe would be forced to fire him. At that point, Mr. Pujoe sought unemployment benefits, but was denied because of his doctor's recommendation that he not work. Mr. Pujoe did not thereafter work; in 2004, Dr. Bulloch recommended that he go to LSU-Health Sciences Center ("LSU-HSC") where he might seek treatment at no cost (because Mr. Pujoe had no income).
The parties could not reach a settlement, so Mr. Pujoe filed a disputed claim before the OWC and the case was set for trial. At the time of the trial of this matter, Mr. Pujoe was being evaluated at LSU-HSC, but had not obtained any recommendations. He sought a continuance at the beginning of the trial in order for him to be evaluated by a neurologist, Dr. Anil Nanda, but the court denied this request. The court did, however, allow him to raise this issue at trial.
Although Stowe had two representatives available to testify (Mr. Pujoe's supervisors), Mr. Pujoe was the only witness who testified at the trial. After the claimant rested his case, the judge asked Stowe to call its first witness, but Stowe, instead, moved for an involuntary dismissal of Mr. Pujoe's claim on the grounds that he had failed to meet his burden of proving his entitlement to benefits or to further medical treatment. After hearing argument, the judge noted that she tended to credit the report of Dr. Rambach because of the court's long experience with his medical opinions and observed that Dr. Rambach's recommendations for physical therapy had not been followed. The court also observed that Dr. Brown, the IME, made no recommendation for or against therapy.
There were several questions at trial about the scope of the issues to be decided. *309 Initially, the court granted the motion for involuntary dismissal of Mr. Pujoe's claim for indemnity benefits, surgery or further treatment by physicians at LSU-HSC. The court did, however, order that Stowe pay for Mr. Pujoe to return to Dr. Bulloch, to undergo physical therapy as recommended by Dr. Rambach and to undergo a functional capacity exam ("FCE"). After taking a brief recess, the court rescinded its previous ruling and issued an amended ruling. The court ordered that Stowe pay for Mr. Pujoe to return to Dr. Bulloch and ordered that some of the recommendations of Dr. Bulloch and Dr. Rambach be complied with, including physical therapy, epidural steroid injections and pain management and an FCE in that order. The court then stated that other rulings concerning Mr. Pujoe's entitlement to benefits, surgery or other treatment be deferred until completion of the conservative treatment. The court stated that the remaining issues would be considered after the results of the conservative treatment were known. Stowe and Liberty did not object to the termination of the case without the presentation of their witnesses. Later, however, the attorney for Stowe wrote the OWC a letter questioning exactly what had been deferred and asking that the OWC either decide the motion for dismissal in their favor or allow them to present their case.
On November 17, 2004, the court issued written reasons for judgment and signed a judgment in accordance with its reasons for judgment. It noted that Stowe had not provided Mr. Pujoe with the therapy that two of the doctors had recommended and that the third doctor offered no opinion about therapy. The court further stated that it found Mr. Pujoe's testimony to be persuasive. Stowe and Liberty sought writs from this judgment; Stowe alone filed a motion for appeal. This court denied the writ application on the showing made; that application did not contain any of the medical reports relied upon by the OWC. This court subsequently converted the appeal into an application for supervisory writs because the judgment was a partial judgment, and we now consider the merits of the application.

DISCUSSION
For the purposes of this opinion, we will first set out the standard of review, and then consider Stowe's assignments of error in the following order: three, four, one, two.

STANDARD OF REVIEW
Factual findings in workers' compensation cases are subject to the manifest error/clearly wrong standard of review. Thornton v. Louisiana Plastic Industries, Inc., 39,105 (La.App. 2d Cir.12/15/04), 889 So.2d 1226, citing Figueroa v. Hardtner Med. Ctr., 35,678 (La.App. 2d Cir.1/25/02), 805 So.2d 1267. Under this standard, a court of appeal may not set aside a trial court's or jury's finding of fact unless it is manifestly erroneous; and, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989), citing Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court; but, if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that, had it *310 been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Thornton, supra, citing, Arceneaux, supra, citing Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
The manifest error standard of appellate review applies in a worker's compensation action even when the trial court's decision is based solely upon written reports, records or depositions. Young v. Physicians & Surgeons Hosp., 39,348 (La.App. 2d Cir.3/2/05), 895 So.2d 723.

Assignment Three: The Hearing Officer (sic)[4] erred in failing to allow the defendant to present its own case on the day of the trial.

Provided that the plaintiff has completed the presentation of his case, an involuntary dismissal may be granted in a workers' compensation case. See LAC 40:I:6211; Taylor v. Tommie's Gaming, 04-2254 (La.5/24/05), 902 So.2d 380. La. C.C.P. art. 1672 provides, in part:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence. (Emphasis added.)
The article clearly provides for the ordinary procedure for the consideration of a motion for involuntary dismissal, and that procedure includes allowing the unsuccessful movant the opportunity to present its case. Further, La. R.S. 23:1317 provides, in part:
A. ... [T]he workers' compensation judge shall hear the evidence that may be presented by each party.
We observe that the OWC invited the employer and insurer to present their case at the conclusion of the claimant's case, but the defendants chose first to seek dismissal of the plaintiff's case under this article. Thereafter, there was some confusion as to the handling of the motion. The court initially agreed to grant the motion in part and dismiss portions of the plaintiff's case, but ordered that the claimant receive therapy. Subsequently, the court maintained the order for therapy, but deferred ruling on the remainder of Mr. Pujoe's claim, stating:
Therefore, any ruling concerning defendant's Motion for Involuntary Dismissal, claimant's request for indemnity benefits after June 10, 2003, claimants request for surgery, claimants request for treatment from Dr. Nanda, and defendant's request for reimbursement, are deferred until after claimant's receipt of intensive physical therapy, modalities, a therapeutic exercise program, with emphasis on the McKenzie Protocol, a home exercise program, pain management, epidural steroid injections, as needed, and a functional capacity evaluation.
*311 The record reveals that Stowe did not object to this procedure, by which the WCJ decided the motion.
Unquestionably, the termination of the case prior to presentation of the defendant's evidence was irregular.[5] Under the circumstances, however, we find that the error does not rise to the level of reversible error. All of the claimant's medical records were accepted into evidence at the start of the trial without objection by either side. The record does not reveal the reasons why Stowe did not insist upon presenting the testimony of their witnesses, but the OWC afforded them little opportunity to do so. It was apparent, however, from the beginning of the OWC's reasons for judgment after the argument on the motion that the court was disinclined to order surgery or further indemnity benefits on the evidence presented by the plaintiff. Even with the court's subsequent retraction of its earlier ruling, it declined to order anything more substantial than physical therapy and conservative treatment for Mr. Pujoe.
Concerning the issue of Mr. Pujoe's diagnosis and treatment, the court was informed by his medical records and was notably concerned with those records offered by Stowe. Stowe did not fully succeed with their motion for involuntary dismissal; but, on the other hand, they were not faced with a substantial expense upon the rendition of the judgment. In the absence of a request to put on the witnesses, there is no showing from which this court can consider what Stowe's witnesses might have said. (That also would have been relevant to the court's ruling.) Both of Stowe's witnesses were supervisors; thus, it is highly unlikely that their testimony would have been probative of the diagnosis or treatment of Mr. Pujoe's medical problems, which was the focus of the OWC's concerns and ruling.
Accordingly, for the reasons discussed herein, the error by the OWC does not rise to the level of a reversible error. In conjunction with any subsequent hearings in this matter, however, the OWC should ensure that both sides have the opportunity to fully present their case.

Assignment Four: The Hearing Officer (sic) erred in considering issues and ruling on issues not raised by the pretrial scheduling order in violation of her own Hearing Officer (sic) Rules, and the Hearing Officer (sic) erred in ruling on these issues before all of the evidence was presented.
LAC 40:I:6201 provides:
Only those issues listed in the pretrial statements shall be litigated at trial. No new issues shall be raised except by written order of the judge for good cause or upon mutual agreement of the parties.
The trial court's "scheduling conference order," dated June 7, 2004, listed "claimant's entitlement to medical treatment as recommended by Dr. Bulloch" as one of the issues of this case. This order was signed by the judge and, presumably, was served upon the parties. The only issue that was resolved at the hearing, however, was the claimant's entitlement to physical therapy. Since "other conservative management" was one of the items mentioned in Dr. Bulloch's report with reference to Dr. Rambach's report, we believe that Stowe had sufficient notice that the physical therapy issue could be contemplated at trial.
Stowe complains in its brief that the trial court should not have considered the *312 issue of Mr. Pujoe's right to treatment with Dr. Nanda at the hearing. The OWC deferred consideration of that issue; however, it was not conclusively decided at the hearing. Further, per La. R.S. 23:1310.8(A)(1)[6], the jurisdiction of the OWC is ongoing, so the OWC may decide the claimant's entitlement to medical treatment, including treatment by any particular physician, in the future without regard to what was scheduled to be heard at an earlier hearing. This assignment is without merit.

Assignment One: The Hearing Officer (sic) erred in failing to rule on the defendant's motion for an involuntary dismissal at the close of the plaintiff's case in chief.

Assignment Two: The Hearing Officer (sic) erred in failing to grant the defendant's motion for an involuntary dismissal at the close of the plaintiff's case in chief.
Despite the lack of a formal ruling, we consider the judge's ruling in this case to be, effectively, a denial of Stowe's motion for an involuntary dismissal because the court did not dismiss the claimant's case. The question, then, turns on whether the judge erred in refusing to dismiss Mr. Pujoe's case after he concluded putting on (his) evidence.
The general rule is that the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. Thornton, supra. In the case sub judice, Dr. Bulloch recommended surgery to correct at least part of Mr. Pujoe's problem and, at minimum, did not object to physical therapy for his ancillary problems.
Stowe insists that the OWC should have relied more heavily on the opinion of Dr. Douglas Brown, the appointed IME. La. R.S. 23:1123 provides:
If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
In McKinney v. Coleman, 36,958 (La.App. 2d Cir.3/14/03), 839 So.2d 1240, this court stated:
Nevertheless, the opinion of the IME physician is not conclusive, and the WCJ must evaluate all of the evidence presented in making a decision as to the claimant's condition.... The significant weight given to the opinion of the IME physician can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and *313 any other relevant factors. (Emphasis ours.)
Further, while this court has generally followed the aforementioned "treating physician rule," courts applying this doctrine have held that the treating physician's testimony is not irrebuttable, as the trier of fact is required to weigh the testimony of all of the medical witnesses. Thornton, supra. The inquiry in this case is whether, based on the totality of the record, the fact finder was manifestly erroneous in accepting the expert testimony presented by Mr. Pujoe over that presented by Stowe.
The reports of Mr. Pujoe's treating physician recommended that he not return to work until recovered from surgery, while the report of the IME indicated that he was ready to return to work immediately, without surgery. This diametrically opposed evidence was evidently of little assistance to the OWC, who chose to rely on the recommendation of Dr. Rambach, a physician whose opinions the judge had trusted in the past to be accurate, coupled with the opportunity to hear the testimony of Mr. Pujoe concerning his back problems.
On this record, we cannot say that the OWC was manifestly erroneous in taking the "middle road" by ordering therapy for Mr. Pujoe rather than either ordering surgery or terminating his right to medical treatment. Dr. Brown's report noted that Mr. Pujoe's problems may have been symptomatically aggravated by his accident; however, it did not explain his opinion that Mr. Pujoe was capable of returning to work given Mr. Pujoe's complaints. Both Dr. Brown and Dr. Rambach, however, recommended against surgery and Dr. Bulloch concurred in part with the recommendation for physical therapy.
In summation, the OWC was faced with conflicting reports, some of which recommended against surgery and some of which recommended physical therapy; and, having had the opportunity to hear Mr. Pujoe's testimony, she chose therapy as the best course of treatment. That choice was perfectly reasonable under the circumstances, and we decline to overturn the judge's choice in that matter.

CONCLUSION
For the reasons set forth herein, the ruling of the OWC is affirmed at Stowe-Woodard's cost.
WRIT GRANTED; RULING AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, PEATROSS, MOORE, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] Stowe's compensation insurer, Liberty Mutual Insurance Company, did not file a motion for appeal.
[2] At the time of the previous writ application, the record was incomplete.
[3] Mr. Pujoe stated that he brought his MRI studies with him, but Dr. Brown refused to look at them; it is unknown whether Dr. Brown obtained the studies from another source.
[4] Judges of the OWC were formerly called hearing officers, see Walker v. ConAgra Food Services, 28,205 (La.App. 2d Cir.4/3/96), 671 So.2d 1218, but are now called workers' compensation judges, per La. R.S. 23:1310.1. The "sic" referenced in this assignment of error is noted in each assignment of error in this case, see infra.
[5] We note that, with regard to the trial court's credibility determination, the absence of testimonial evidence in opposition to the only witness is particularly troubling.
[6] A. (1) The power and jurisdiction of the workers' compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified, including the right to require physical examinations as provided for in R.S. 23:1123; however, upon petition filed by the employer or insurance carrier and the injured employee or other person entitled to compensation under the Worker's Compensation Act, a workers' compensation judge shall have jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition, subject to the provisions of law relating to settlements in workers' compensation cases. (Emphasis ours.)