801 So.2d 550 (2001)
JENNINGS AMERICAN LEGION HOSPITAL
v.
Margarita DAIGLE.
No. 01-621.
Court of Appeal of Louisiana, Third Circuit.
November 14, 2001.
*551 Henry H. LeBas, Jenny M. Matte, Lafayette, LA, Counsel for Plaintiff/Appellee: Jennings American Legion Hospital.
Michael B. Miller, Crowley, LA, Counsel for Claimant/Appellant: Margarita Daigle.
Court composed of SYLVIA R. COOKS, OSWALD A. DECUIR and ELIZABETH A. PICKETT, Judges.

FACTS
PICKETT, Judge.
Margarita Daigle worked as a housekeeper at Jennings American Legion Hospital (JALH). On or about March 3, 1998, she was injured in an accident at work. JALH and their insurer began paying workers' compensation benefits. The claimant was seen by several doctors, including Dr. Thomas Montgomery, who examined her twice at the request of the Office of Workers' Compensation. He saw the claimant July 13, 1999, at which time *552 he agreed with her treating physician that she was unable to work. He again examined her on April 19, 2000, at which time he found she could be released to light-duty work with restrictions. In September 2000, he released her to go back to work, approving a job the employer said fit within the restrictions. Subsequently, JALH offered her a position they said fit within the restrictions. She applied for the position, but ultimately was not hired because JALH said she refused the mandatory pre-employment physical. The employer then terminated her weekly benefits.
This matter went to trial January 16, 2001. On March 5, 2001, the trial court entered a ruling in favor of the employer. The court found the claimant was not entitled to supplemental earnings benefits after October 13, 2000, and found a job had been offered wherein she would have been making more than she had been preaccident. The workers' compensation judge further denied the claimant's request for penalties and attorney fees. From this judgment, the claimant appeals.

DISCUSSION
The claimant has filed six separate assignments of error, as follows:
1. The workers' compensation judge erred in relying upon the September opinion of Dr. Montgomery.
2. The workers' compensation judge erred in finding that Margarita Daigle was capable of performing the modified job.
3. The workers' compensation judge erred in finding that a job had been tendered to Margarita Daigle.
4. It was error for the workers' compensation judge to terminate weekly compensation benefits.
5. The workers' compensation judge erred in failing to order defendant to guarantee and pay for a discogram.
6. The workers' compensation judge erred in failing to award penalties and attorney's fees to Margarita Daigle.

ASSIGNMENTS OF ERROR 1, 2, 3, AND 4
At trial, the parties offered conflicting evidence regarding the claimant's ability to work. Daigle's treating physicians, Dr. John Cobb and Dr. Daniel Hodges were both of the opinion that the claimant could not return to work. Dr. Montgomery, the IME, opined that she could be released to a light-duty position. The appellant argues that the workers' compensation judge gave too much weight to Dr. Montgomery's opinion. The trial court accepted the opinion of Dr. Montgomery, rejecting totally the opinions of the appellant's treating physician.
This finding of the workers' compensation judge is subject to the manifest error standard of review. Findings of fact are clearly within the province of the trial court. An appellate court, on review, may not reverse the findings of fact of a workers' compensation judge unless we find that it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial court relied on the opinion of Dr. Thomas Montgomery in determining the appellant was capable of returning to work at the job approved by Dr. Montgomery in September. The workers' compensation judge obviously recognized, however, that there were inconsistencies between the doctor's opinion and the job description. In her written judgment the judge states,
It is unclear if Dr. Montgomery was questioned about the restrictions regarding *553 bending, stooping and squatting, as well as frequent breaks mentioned in one of his reports, as well as addressed in a report of Dr. Gregory Smith.
Dr. Smith had rendered a report to the employer as to his opinion regarding the appellant's injury, however, Dr. Smith never actually saw the appellanthis report was based solely on a review of the appellant's medical records. In spite of this obvious and very crucial inconsistency the judge relied on Dr. Montgomery's recommendation that she return to work, at the job he approved. We believe by so finding the workers' compensation judge manifestly erred.
The appellant's treating physicians both are of the opinion that the appellant is not capable of returning to work at this time. Their opinions were totally rejected by the court who chose instead to accept the findings of Dr. Montgomery, the IME.
This court has interpreted La. R.S. 23:1123, which governs the appointment of an independent medical examiner, to mean that an IME's medical conclusions should be given significant weight because the IME is an objective party. Fritz v. Home Furniture-Lafayette, 95-1705 (La. App. 3 Cir. 7/24/96); 677 So.2d 1132. Nevertheless, the opinion of the IME is not conclusive, and the WCJ must evaluate all of the evidence presented in making a decision as to the claimant's condition. Brasseaux v. Abbeville General Hosp., 97-1062 (La.App. 3 Cir. 3/18/98); 710 So.2d 340, reversed in part on other grounds, 98-1066 (La.6/5/98); 720 So.2d 673. "[T]he significant weight [given to the testimony of a court-appointed expert] can be lessor or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and any other relevant factors." Green v. Louisiana Coca Cola Bottling Co., Ltd., 477 So.2d 904, 906 (La.App. 4 Cir.), writ denied, 478 So.2d 910 (La.1985). (Emphasis added.)
Dr. Montgomery examined the appellant twice. After the first examination on July 13, 1999, he agreed with her treating physicians that she was not capable of working. He again examined her April 19, 2000. Following this examination he issued a report that stated in his opinion the appellant could "return to a light duty position with restrictions regarding bending, stooping and squatting, as well as allowing for frequent breaks." Dr. Montgomery specified the restrictions as follows:
LIGHT WORK: Lifting 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be only a negotiable amount, a job is in this category when it involves sitting most of the time with a degree of pushing/pulling of arm and/or leg controls. *LIMITED USE OF AFFECTED EXTREMITY LIMITED BENDING SQUATTING, CLIMBING, AND LIFTING*
On April 28, 2000, Dr. Montgomery sent a letter to the Office of Workers' Compensation stating he "received a job description regarding a service operator position at Jennings Hospital for Ms. Margarita Daigle. I reviewed it and it appears that it is a medium duty type job which requires her to lift objects up to 50 pounds." His opinion was that she could do this job if it was modified to include limits on weight restrictions as in a light duty position. Dr. Montgomery has never examined the appellant again.
Nevertheless, in a letter to the Office of Workers' Compensation dated September 13, 2000, Dr. Montgomery states he has *554 reviewed a job description of an MOB/VA Service Operator and "[i]t appears that it falls under light duty restrictions." He states his opinion that Ms. Daigle should be able to return to this position.
Subsequently, the defendant offered a job to the appellant that included the following description:
a. PHYSICAL REQUIREMENTS-Due to the duties required of the Environmental Services Department you must be capable of lifting objects properly/capable of bending, stooping, kneeling/reaching with no problems/lifting, carrying objects for short distances/capable of standing and walking for up to seven to eight hours per shift/able to climb a ladder and complete cleaning duties from a ladder/able to use hands and fingers while performing duties from the ladder/able to use hands and fingers while performing duties for seven to eight hours per day repetitively/capable of pushing/pulling carts by utilizing both hands and legs/able to lift object such as mop buckets 15 to 20 times per shift. Reaching and handling objects at chest level/above the shoulders. Capable of lifting objects up to 25 pounds and capable of pushing and pulling wheeled carts with empty boxes and office/exam room trash. Able to use body when dust mopping, wet mopping, vacuuming and daily cleaning duties.
This job description clearly is not within the restrictions placed on the appellant by Dr. Montgomery when he examined her in April 2000. There is no valid basis in the record for the change in Dr. Montgomery's opinion as to the appellant's abilities. The workers' compensation judge recognized this, as is reflected in the judgment. She apparently felt compelled to defer to the opinion of the IME doctor, rejecting the opinions of the treating physicians. Under the circumstances of this case, we find the judge in fact gave undue weight to the opinion of the IME doctor whose opinion changed without benefit of another examination of the appellant. His conflicting reports render his opinion as to her work ability unreliable.
The only reliable evidence in the record as to the appellant's work ability comes from her treating physicians who are both of the opinion that the appellant is not yet capable of returning to work.
We find the workers' compensation judge erred in finding that the appellant is capable of returning to work at this time, and erred in finding the appellant capable of performing the modified job. All evidence, including Dr. Montgomery's report of April 19, 2000, reflect that the appellant was unable to return to her previous employment. Both Dr. Cobb and Dr. Hodges are of the opinion she is not capable of performing any type work. Accordingly, and in view of the findings of this court as to the weight that should have been afforded the IME's September report, we find the worker compensation judge erred in terminating the appellant's weekly benefits and order that they be reinstated.
The workers' compensation judge further erred in finding the appellee made a valid job offer to the appellant. The job description clearly shows it is outside the restrictions set even by the IME doctor upon whose report they relied. A job offer which falls outside the restrictions placed on the appellant is in fact offering no job at all.

ASSIGNMENT OF ERROR NUMBER 5
The appellant argues the workers' compensation judge erred in denying her request for a discogram. A review of the record reflects that judgment was rendered in a separate judgment on November 14, 2000. It is not properly before us on appeal. We cannot, therefore, consider this assignment of error.

*555 ASSIGNMENT OF ERROR NUMBER 6
The employer terminated the appellant's benefits and argues they relied upon the report from the IME doctor in doing so. They argue that, because they relied upon this report, they cannot be found to have acted in an arbitrary and capricious manner. They offered a job within the restrictions, which they say the appellant refused, and subsequently terminated her benefits. They argue, the appellant is not entitled to penalties and attorney fees. We disagree.
The reports from the IME doctor were conflicting at best. The employer's modified job description submitted to the IME doctor clearly fell outside the limitations he placed on her. This is easily ascertainable by a simple reading of the April report as well as the job description. The September report, upon which they argue they relied, was contradictory to all other reports and given without the benefit of either another physical examination or review of any post-April medical records, a fact the employer knew. The job offered to the appellant was clearly outside the restrictions. Considering the facts of this case, we find the employer was arbitrary and capricious in termination of benefits. Accordingly, we award penalties in the amount of $3,000.00 and attorney fees of $4,000.00.

DECREE
The judgment of the workers' compensation judge terminating the appellant's benefits is reversed. The appellant is awarded penalties of $3,000.00 and attorney fees of $4,000.00. Cost of this appeal are taxed to the appellee.
REVERSED.