# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 06-358


**RANDALL MARKS**

**VERSUS**

**84 LUMBER COMPANY**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 96-05771
SHARON MORROW, WORKERS' COMPENSATION JUDGE
**\*\*\*\*\*\*\*\*\*\***


## SYLVIA R. COOKS
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**


**Michael E. Holoway**
**Holoway Law, L.L.C.**
**1800 W. Causeway Approach, Suite 115**
**Mandeville, LA 70471**
**(985) 626-3141**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
        **Randall Marks**

**Hugh B. Exnicios**
**Exnicios Legal Center**
**247 Exnicios Drive**
**Folsom, LA 70437**
**(985) 796-8300**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
        **Randall Marks**

**Lawrence B. Frieman**
**Juge, Napolitano, Guilbeau, Ruli, Frieman & Whiteley**
**3320 West Esplanade Avenue North**
**Metairie, LA  70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **84 Lumber Company**

**COOKS, Judge.**

In this case, the claimant, Randall Marks, alleged he suffered a brain injury in 1992 during the course and scope of his employment. The case was first tried in 1999, and the Office of Workers' Compensation (OWC) rendered a judgment which was appealed to this court in *Marks v. 84 Lumber Company*, 00-322 (La.App. 3 Cir. 10/11/00), 771 So.2d 751. We set forth the following relevant facts and procedural history:

> Randall Marks, then 31, suffered a mild brain injury on April 16, 1992, while he was employed as manager of the 84 Lumber Company store in Lafayette. He was attempting to load some lumber on a forklift. It is uncertain how the accident happened because Marks was loading the lumber by himself and does not remember any details. It is believed that he got hit on the head with a board. Marks' fellow employee, who was working the front of the store at the time, came to look for him and found him in a confused state and vomiting. His parents were called, and they took him to the hospital.
>
> According to the hospital records, Marks was alert and oriented when he got there, but he had a severe headache and blurred vision. A red area was present on his left shoulder extending to the upper arm. There was also an area on his right groin that required a band aid. No discolorations or abrasions were noted on his head. Marks was admitted for observation overnight and was discharged the next day. Marks continued with symptoms of headaches, memory loss, and easy fatigability, in addition to neck, back, and leg pain.
>
> Several months later, around August 1992, Marks began experiencing fainting spells, which in medical terms are known as "syncopal episodes." These spells increased in frequency until he was experiencing 15 to 18 of them a day by the time of the trial of this case in 1999. Marks fell on his head so much that sometimes he required stitches, and it got to the point that his doctors suggested he wear a helmet to protect his head. The majority of the testimony during the eight-day trial focused on the cause of these syncopal episodes.
>
> When the accident happened, Marks had been married for over ten years, he and his wife had two children and he had been employed for eight years, as manager for the last three, at his employer's store. After the accident, he has not worked at all. He has lost his wife, custody of his children, his home, and, according to most doctors testifying, his self-esteem. The employer has paid benefits and all medical expenses (except for an occipital neurectomy in 1996).

-1-

In detailed and well-analyzed reasons for judgment, the workers' compensation judge found that "Marks had consciously and deliberately produced the large majority of his symptoms, specifically including the syncopal spells." However, the trial judge believed that Marks had proved by clear and convincing evidence that he was suffering from a depression caused by the accident at work, which rendered him temporarily, totally disabled, and the court awarded benefits. The court found that he was not feigning the depression. The disability finding is appealed by 84 Lumber and its workers' compensation insurer, Kemper Insurance Company. 84 Lumber and Kemper additionally appeal a ruling by the workers' compensation judge that neither Marks nor his parents committed fraud to obtain benefits in violation of Louisiana Revised Statute 23:1208.

*Id.* at 752.

This court affirmed in full the findings of the OWC, finding the claimant was temporarily, totally disabled due to his depression, which was caused by the accident. We found the claimant was unable to prove by clear and convincing evidence that the syncopal episodes were caused by the accident. Claimant continued receiving temporary, total disability (TTD) benefits.

In 2001, the employer and workers' compensation insurer requested additional testing of the claimant to support its assertion that he was no longer disabled. The WCJ ordered an independent medical examination of the claimant by Dr. Ron Taravella, a Board Certified Psychiatrist. After the examination, Dr. Taravella rendered a report diagnosing claimant as suffering from "severe, totally disabling, completely work related post traumatic stress disorder (PTSD), complicated by depression." Based on Dr. Taravella's findings, the claimant petitioned the court to modify its original judgment to find claimant totally and permanently disabled as a result of the work-related PTSD, in addition to the depression which was previously found compensable. Claimant also requested penalties and attorney fees for the employer's failure to pay medical expenses.

After a hearing, the WCJ determined that Dr. Taravella's diagnosis of PTSD

was not supported by the evidence or by any other mental health professional associated with the case. The WCJ concluded "[a]t best, Marks is at supplemental earnings benefits status." The WCJ did render in claimant's favor all reasonable and necessary medical expenses relating to the depression which was caused by his work injury. Claimant's request for penalties and attorney fees was dismissed without prejudice to claimant's right to re-urge the issues.

Claimant has appealed the judgment, contending the WCJ erred in failing to find him totally and permanently disabled, and in reclassifying him from TTD benefits status to SEB status. The employer answered the appeal, and argues it met its burden of proving that claimant no longer suffers from work-related depression or, in the alternative, proved any depression claimant is suffering from was not related to the work accident of April 16, 1992. It therefore requests this court reverse the portion of the judgment awarding reasonable and necessary medical expenses relating to any work-related depression.

**ANALYSIS**

An appellate court may not set aside the factual findings of a workers' compensation judge in the absence of manifest error or unless they are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[W]here there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id*. at 844. However, a reviewing court may reverse a fact finder's determinations if such factual findings are not reasonably supported by the record and are clearly wrong. *Stobart v. State Through DOTD*, 617 So.2d 880 (La.1993).

"An employee in a worker's compensation action has the burden of

establishing a causal link between the work-related accident and the subsequent disabling condition." *Miller v. Roger Miller Sand, Inc.*, 94-1151, p. 6 (La.11/30/94), 646 So.2d 330, 334. An employee's disability is presumed to have resulted from the accident if before the accident, the injured employee was in good health, but commencing with the accident, symptoms of the disabling condition appeared and continuously manifested themselves afterwards. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985). However, the presumption requires either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. *Id.*

The WCJ acknowledged claimant has serious mental problems, and that he has "made little progress since the last trial." Claimant has attempted suicide on several occasions, including jumping from a parking garage which fractured his pelvis and femur. Claimant has also taken to wearing a football helmet at all times, to protect himself from the frequent head injuries he suffered due to his fainting episodes. Defendants submitted a surveillance video that showed claimant helping load bags, while wearing a football helmet, into his mother's car in a store parking lot.[1]

The WCJ set forth her conclusions in extensive written reasons, which stated as follows:

> The WCJ finds that Marks is currently at supplemental earnings benefits disability status. This finding is based upon the testimony of Dr. Dawes and Dr. Wade. Dr. Taravella's diagnosis of Post Traumatic Stress Syndrome was not supported by the evidence or by any other mental health professional associated with the case from its inception, so his testimony will be accorded no weight.

---

[1] The video was introduced by Defendants to counter claimant's parents' testimony that their son required around-the-clock supervision. The video shows claimant walking from the store to his mother's car on more than one occasion, with the mother nowhere in sight. What is plainly in sight is claimant walking to and from the store in a football helmet.

Dr. Dawes testified in his deposition that Marks suffers from major depression but his diagnosis is actually Mental Disorder Not Otherwise Specified because of the patient's cognitive decline, severe anxiety and some degree of psychosis. He is treating the patient for continued depression, anxiety and psychosis, all of which he relates to the original work incident. His opinion is that Marks is totally disabled and will not return to work. He testified that Marks cannot work because his cognitive defects make it difficult for him to learn and a job would increase the frequency of his syncopal spells. However, if one were to put aside the cognitive deficits, syncope and headaches, Dr. Dawes believes Marks is still disabled from the depression alone. The cognitive deficits, syncope and headaches play a big role in the depression, and without them, he would be able to function at some degree and one day do some retraining and become more independent.

Dr. Larry Wade saw Marks on October 16, 2002, as the employer's second opinion psychiatrist. In his report of October 23, 2002, Dr. Wade diagnosed malingering and adjustment disorder with mixed emotional features at Axis I, severe personality disorder not otherwise specified at Axis II and multiple self-inflicted musculoskeletal injuries at Axis III. Dr. Wade actually found Marks to be cheerful and witty throughout the interview, not manifesting any evidence of depression. Dr. Wade concluded that while Marks "probably is depressed to some extent" most of the claims of depression are malingered and any genuine depression is related to having painted himself into a corner.

Though the law in workers' compensation cases typically requires that the opinions of the treating physician be given the greater weight, Dr. Wade discussed in both his report and his live testimony the difficulty of the treating physician acting as an expert witness in cases such as this where it is important for the treating physician to believe the patient's reports, despite evidence to the contrary. He pointed to the testimony of Dr. Cloyd and Dr. Domingue, two "very competent clinicians" who maintained that Marks' symptoms were genuine during their course as treating physicians, but who testified that Marks should have been diagnosed with malingering, factitious disorder or conversion disorder once they no longer acted as treating physicians.

Dr. Dawes acknowledged that he prefers to stick to treatment as opposed to acting as an expert witness but did not see how the situation could be avoided. He cares about his patient and admits there is a potential for viewing him in as favorable a light as possible, or giving him the benefit of the doubt. In his opinion Marks is not a malingerer, and he believes the syncopal spells are involuntary. Dr. Dawes testified that this is a very unusual case and he has never had another patient like this. And while Dr. Dawes acknowledged it was appropriate to seek out second or even third opinions on patients, particularly those that are difficult or challenging, he has not sought any consultations on Marks'

case. He testified that he "did not believe that it would bring more clarity to this situation."

Dr. Dawes' opinions must be viewed in light of the laws of this case. No one questions that Marks has very serious mental problems, but the weight of the evidence in the first trial established very clearly that the work accident was not the cause of those problems. Marks produces those problems himself. The cognitive defects, syncope, headaches and psychosis are not compensable and must be taken out of the disability analysis. *Miller v. Roger Miller Sand, Inc.*, 646 So.2d 330 (La. 11/30/94), *Baullion v. Old American Pottery Company*, 801 So.2d 567 (La. App. 3 Cir. 11/21/01).

Marks' most incapacitating symptoms are those that are non-compensable. The burden of establishing temporary, total disability is on the employee to prove by clear and convincing evidence, unaided by any presumption of disability, that the employee is pyhsically unable to engage in any employment or self-employment. LSA-R.S. 23:1221(1)(c). Similarly, the burden of proving permanent and total disability is on the employee to establish by clear and convincing evidence his physical inability to engage in any employment. LSA-R.S. 23:1221(2)(c). The WCJ finds that the evidence of total disability is not clear and convincing. Even Dr. Dawes ackowledges that without the symptoms that have been determined to be self-inflicted Marks could return to a functional life. Dr. Dawes' testimony cannot be accepted in full as he is unable to objectively consider this case in light of the law of the case. This is in no way intended as criticism of Dr. Dawes, who appears to be dealing with this unique case as best he can.

At best, Marks is at supplemental earnings benefits status. However, as the employer is entitled to a credit for all sums earned, this is unlikely to entitle Marks to any future benefits, as the WCJ believes more than 520 weeks of benefits have been paid. The judgment will reflect the finding of supplemental earnings benefits status payable according to the law.

Claimant argues the WCJ committed manifest error in failing to give any weight to the testimony of the independent medical examiner, Dr. Taravella. Claimant also argues the WCJ erred in placing greater emphasis on the testimony of the defense psychiatrist, Dr. Wade, and in failing to give greater weight to the testimony of Dr. Dawes, claimant's treating physician.

Dr. Taravella diagnosed claimant as totally and permanently disabled as a result of post traumatic stress disorder (PTSD), complicated by depression. The WCJ chose

not to accept Dr. Taravella's diagnosis of PTSD. She noted that none of the dozen or so other doctors who examined claimant believed he had PTSD. Rather than simply disregarding Dr. Taravella's testimony, as claimant argues, the WCJ considered his findings but chose to accept the testimony of the numerous other doctors, including that of Dr. Dawes, that claimant did not suffer from PTSD.

La. R.S. 23:1123, which provides for the appointment of an IME when there is a conflict in the medical evidence, states that the report of the IME shall be *prima facie* evidence of the facts therein stated. This court has interpreted La. R.S. 23:1123 to mean that an IME's medical conclusions should be given significant weight because the IME is an objective party. *Fritz v. Home Furniture-Lafayette*, 95-1705 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132. Nevertheless, the opinion of the IME is not conclusive, and the WCJ must evaluate all of the evidence presented in making a decision as to the claimant's condition. *Jennings Am. Legion Hosp. v. Daigle*, 01-621 (La.App. 3 Cir. 11/14/01), 801 So.2d 550, *writ denied*, 01-3294 (La. 9/5/03), 852 So.2d 1038. The weight given to the testimony of an IME can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and any other relevant factors. *Jennings*, 677 So.2d 1132; *Pujoe v. Stowe-Woodard*, 40,044 (La.App. 2 Cir. 8/17/05), 911 So.2d 304, *writ denied*, 05-2365 (La. 4/17/06), 926 So.2d 304; *Green v. La. Coca Cola Bottling Co., Ltd.*, 477 So.2d 904 (La.App. 4 Cir.), *writ denied*, 478 So.2d 910 (La.1985).

It is imperative to note the difficulty any doctor has in rendering a definitive diagnosis in this case after seeing claimant on just one occasion, as both Dr. Taravella and Dr. Wade did. Without fail, every doctor who treated claimant noted the

extremely difficult and perplexing nature of his problems. It seems obvious in such a case that the need to rely on the treating physician is particularly high. Dr. Dawes, although finding claimant totally disabled due to his depression, did not find claimant met the criteria commonly found in PTSD cases. As stated previously, no other doctor found claimant suffered from PTSD. Therefore, we cannot say the WCJ erred in not accepting Dr. Taravella's diagnosis of PTSD.

Although the WCJ did not accept Dr. Taravella's diagnosis of PTSD, she did find that claimant's depression was still present and that he was entitled to reasonable and necessary medical expenses to treat the depression. Despite finding that claimant still suffered from compensable depression, this court's previous finding that claimant was totally disabled due to his depression and Dr. Dawes's unequivocal testimony that claimant is still totally disabled from his depression, the WCJ found "at best, Marks is at supplemental earnings benefits status." Claimant disputes this finding, noting that two of the three testifying physicians were of the opinion claimant was totally disabled and the defense offered "no countervailing evidence, particularly a dearth of clear and convincing evidence that Mr. Marks is employable pursuant to statutory mandate." We agree.

The WCJ stated that "even Dr. Dawes acknowledges that without the symptoms that have been determined to be self-inflicted Marks could return to a functional life." However, as the WCJ herself noted, Dr. Dawes maintained his long-held belief that claimant was still disabled from the depression alone. Dr. Dawes specifically stated that *if* claimant was able to control his depression, with *retraining* he could *possibly* become more independent and reenter the work force.

An award for TTD benefits "shall cease when the physical condition of the employee has resolved itself to the point that . . . continued regular treatment by a

physician is not required." La.R.S. 23:1221(1)(d). Thus, entitlement to workers' compensation benefits is based on the claimant's ability or inability to earn wages. *Newson v. Richard Spurgeon Masonry*, 03-1367 (La.App. 3 Cir. 3/3/04), 867 So.2d 78, *writ denied*, 04-839 (La. 5/14/04), 872 So.2d 523; *Mitchell v. Abbeville Gen. Hosp.*, 93-1146 (La.App. 3 Cir. 4/6/94), 635 So.2d 540. This court has consistently held, without a change in medical condition or identification of jobs available which claimant could perform, an employer or workers' compensation carrier has no basis upon which to change a workers' compensation claimant's classification from TTD benefits to SEB. *See Newson*, 867 So.2d 78; *Joiner v. Newberg Venture*, 94-1533 (La.App. 3 Cir. 5/3/95), 657 So.2d 206; *White v. La. State Penitentiary*, 93-770 (La.App. 3 Cir. 3/2/94), 634 So.2d 1271.

There was no evidence presented by the employer that claimant ever received any type of vocational treatment or training. Thus, the retraining that Dr. Dawes referenced as necessary for any possible reentry into the work force has not occurred. Further, no evidence has been offered that there are any jobs available which claimant could perform in his current condition. The employer fell woefully short of meeting its burden of showing claimant is physically capable of any type of work. Therefore, the WCJ erred in reclassifying claimant from TTD benefits to SEB. We therefore reinstate the prior ruling of this court that Marks is temporarily, totally disabled due to his depression.

The defendants' argument that it met its burden of proving that claimant no longer suffers from work-related depression or, in the alternative, proved any depression claimant is suffering from was not related to the work accident of April 16, 1992 is without merit. No testimony, other than that provided by Dr. Wade, indicated that claimant's depression has improved. The WCJ also noted that claimant

is entitled to a statutory presumption of causation that his depression was related to the work accident. Further, we find the balance of Dr. Wade's testimony provided little that was not set forth in the prior trial.[2]

## DECREE

For the foregoing reasons, the portion of the judgment of the Office of Workers' Compensation reclassifying claimant from temporary, total disability benefits status to supplemental earnings benefits status is reversed. Claimant is entitled to receive temporary, total disability benefits as a result of his depression which is attributed to the April 16, 1992, accident. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to defendants.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

---

[2] Defendants again presented the argument that Dr. Dawes could not provide unbiased testimony due to role as claimant's treating psychotherapist. Defendants made this same argument in the prior appeal, and this court addressed it as follows:

> The defendants asked us to find manifest error in the trial court's reliance on the testimony of Drs. Dawes and Cole. Their argument is that these experts, notwithstanding that they were treating physicians, were virtually disqualified as least likely to give an accurate assessment of the plaintiff in the medical-legal setting because of their roles as treating psychotherapists. According to the defendants' argument, these experts were unable to diagnose malingering, and the trial judge was wrong to rely on their opinions regarding depression and its relationship to the work accident. In support of these arguments, the defendants relied upon an article which they introduced in evidence, Larry H. Strasburger, M.D., Thomas G. Gutheil, M.D., and Archie Brodsky, B.A., On Wearing Two Hats: Role Conflict in Serving as Both Psychotherapists and Expert Witness, 154:4 American Journal of Psychiatry 448 (1997).

> In our opinion this article, while it questions whether the treating therapist is the right person to perform a forensic evaluation, warns more of ethical conflict and legal liability of the clinician/evaluator than it does of the risk of inaccuracy in testimony. The trial judge was fully aware of this article when she made her evaluations of the reliability of the testimony of these doctors. She believed that they accurately described Marks' condition, and we find no basis on which to find error in that evaluation. We affirm the trial court's conclusion that Marks proved by clear and convincing evidence that his depression was caused by the accident.

*Marks*, 771 So.2d at 759.

To accept defendants' argument that a physician cannot give objective testimony because he is the treating physician would ignore the long established rule that the treating physician's testimony is entitled to greater weight than that of a doctor who has seen a patient simply for evaluation.