MADELINE JASMINE, Judge Pro Tempore.
|2The appellant/employer, East Jefferson General Hospital, has appealed the trial court judgment in favor of claimant, Trudy Cortez. For the reasons that follow, we affirm the award of medical payments and compensation benefits and reverse the award of penalties and attorneys fees.

FACTS

On September 25, 1998, the claimant was working as a medical technologist at East Jefferson General Hospital, when she injured her back while in the course and *709 scope of her employment. She sought medical treatment from Dr. Ralph Gess-ner, who performed lumbar surgery on her in July 1999. Ms. Cortez testified that following this procedure her back pain improved for a short time, and she returned to work at regular duty on a full time basis. She explained that in November 1999, her pain increased and a few months later she was put on light duty work. She continued on light duty work until 2002. She received | ^compensation payments until December 20, 2002. Those payments and medical treatment are not at issue in this appeal.
In 2002, Ms. Cortez moved to north Louisiana and sought treatment from Dr. Pierce Nunley, an orthopedist in Shreveport. In February 2003, Ms. Cortez went to work as a medical technologist at a hospital in northern Louisiana. Her back pain continued and she experienced pain in both of her legs making it difficult to walk or stand. She testified that in December 2003, she began walking -with a cane for support because her leg gave out at times. Ms. Cortez testified that she visited Dr. Nunley regularly and underwent numerous injections, nerve blocks and physical therapy. Her back pain and leg pain continued.
Ms. Cortez testified that in July 2005 while walking down a flight of stairs, her leg gave out and she “kind of bounced downstairs.” In August 2005, Dr. Nunley performed a discogram, which reproduced the pain she was experiencing. On October 25, 2005, Dr. Nunley performed an anterior lumbar interbody fusion at the L4-5 and L5-S1 disc spaces. Ms. Cortez testified that this procedure significantly reduced her pain allowing her to work full time including 15 hours per week overtime. She no longer has to take medication.
On July 2, 2004, Ms. Cortez filed a second disputed claim for compensation seeking additional workers’ compensation benefits for the September 1998 accident. It is these benefits and medical treatment that are the subject of this appeal. East Jefferson answered claiming that benefits for this accident had been paid and denied that further benefits were due. The defendant paid for the initial medical treatment from Dr. Nunley. However, when Dr. Nunley recommended a discography in anticipation of surgery, the defendant refused payment. Ms. Cortez underwent the discography and surgery, which were paid for by her private health insurer, Health Plus.
LLori Francis testified that she was a claims adjuster for the defendant and was assigned to Ms. Cortez’ claim. Ms. Francis testified that she denied payment of the discogram because this procedure was not recommended by Dr. Gordon Mead, who examined the claimant at the request of the defendant, or Dr. Bilderback who examined the claimant after being appointed by the Office of Workers’ Compensation Administration pursuant to defendant’s request. Ms. Francis admitted that Dr. Nun-ley’s office contacted her to request authorization for the discogram, but denied that her office was contacted for authorization for the surgery. She testified that she was notified of the surgery after the procedure took place. Ms. Francis acknowledged that authorization for a myelo-gram and CT scan were denied because there was a pending IME. She denied receiving further requests for these procedures until after they were performed.
On cross-examination, Ms. Francis admitted that she no longer has access to her file in this matter, but had reviewed her notes prior to trial. She was presented with the motion for IME filed by the defendant, which states there had been a request for discography before proceeding with surgery. Ms. Francis denied that *710 anyone in Dr. Nunley’s office had called requesting authorization for surgery.
The deposition of Dr. Nunley was admitted into evidence. Ms. Cortez’ medical records were attached to the deposition. Dr. Nunley testified that he is board certified in orthopedic surgery with a specialty in spinal medicine and spinal surgery. Dr. Nunley testified that he first saw Ms. Cortez on January 31, 2003 at which time she was complaining of back and leg pain. He recommended an MRI and EMG. The MRI performed on February 14, 2003 showed significant disc disease at the L4-5 and L5-S1 levels. The EMG results were negative. Dr. Nunley explained that the initial injury caused pain from the disc and the nerve root. The first surgery performed in 1999 decompressed the nerve root, but did not address |»the discogenic low back pain. He recommended conservative treatment including physical therapy, non-narcotic pain medication, and nerve blocks. Ms. Cortez’ pain continued to increase and in April 2004, he recommended discography in anticipation of a spinal fusion. Authorization was refused by Ms. Cortez’ former employer. Eventually the procedure was authorized by Ms. Cortez’ private health insurer and the dis-cogram was carried out on August 16, 2006. Dr. Nunley explained that this procedure reproduced the concordant pain that Ms. Cortez experienced on a daily basis. The spinal fusion was performed on October 25, 2005. Ms. Cortez was unable to work from this surgery until January 26, 2006 at which time she was released to light duty work. She returned to full duty work on April 19, 2006. Dr. Nunley further testified that he recommended a mye-logram and CT scan be performed prior to surgery and these tests were denied by the defendant as well. He explained that these tests showed blunting of the SI nerve root.
Dr. Nunley testified that the July 2005 fall did not aggravate or accelerate Ms. Cortez’s condition.
Dr. Nunley compared his experience to that of Drs. Mead and Bilderback. Dr. Bilderback is a fellowship trained spine surgeon who performed spine surgery for three years then did a fellowship in hand surgery. He no longer does spinal surgery. Dr. Mead is not a spine surgeon and does not perform spinal surgery.
The deposition of Dr. Mead was admitted into evidence. Dr. Mead testified that he is an orthopedic surgeon and performed spine surgery from the time of his residency until the early 1990s. He sees 10 to 15 patients per week who complain of back pain some of which are candidates for back surgery. Dr. Mead first examined Ms. Cortez on October 1, 2003 at the request of her former employer. Dr. Mead testified that while Ms. Cortez had marked limited motion in her low 1 ^back, the physical exam showed her reflexes to be intact, she had good strength and sensation, and her neurological exam showed no evidence of nerve root impingement. He testified that he reviewed the MRI reports of February 14, 2001 and the EMG/ nerve conduction studies of February 19, 2003. Dr. Mead concluded there was no objective evidence to support the severity of her complaints. He opined that Ms. Cortez had degenerative disc disease and scarring around her nerve roots. He did not feel that an IDET (Intradiscal Electrothermal Therapy) procedure or discogram would benefit Ms. Cortez.
On May 24, 2004, Dr. Mead examined Ms. Cortez a second time at the request of defendant. Ms. Cortez reported that her pain had increased in the last year and she had sought treatment from two pain specialists. Dr. Mead reviewed the report of the' February 14, 2003 MRI and found it showed mild degenerative disease and no *711 neural impingement or epidural scar formation. He reviewed reports from a CT scan dated October 17, 2003 and a myelo-gram dated December 8, 2003, both of which were negative. He noted that Ms. Cortez walked with a slight limp but had no difficulty getting on the exam table, which he found inconsistent. Her physical exam showed no decreased sensation or weakness and no nerve root impingement. While he did note the circumference of her right leg measured ½ inch smaller than that of her left, he did not place any significance on this finding. Dr. Mead concluded that there were no objective findings to support her complaints of severe pain. Dr. Mead explained that he did not believe a discogram would be helpful because he does not believe a fusion is an indicated procedure for degenerative lumbar disc disease without objective symptoms on physical exam and given the paucity of the objective findings on the CT scan and myelogram. Dr. Mead testified that he has never ordered a discogram because he does not think they have any value to help determine how to treat a patient.
17Pr. Mead further testified that the procedure performed by Dr. Nunley, an anterior lumbar interbody fusion, is only indicated in chronic back pain unrelieved by conservative treatment that is due to instability, fracture or recurrent disc herniation. He opined that the findings on plaintiffs diagnostic tests were not sufficient to justify this surgery. Reports by Dr. Mead dated 10/1/03 and 5/24/04 corroborated his testimony.
A report from Dr. Karl Bilderbaek was admitted into evidence. Dr. Bilderbaek was appointed to examine Ms. Cortez in response to a request for an independent medical examination filed by the defendant. The accompanying motion states “the sole dispute in this matter is as to the medical condition of the Employee and her request for approval of a discogram and surgery.” Dr. Bilderbaek examined Ms. Cortez and noted her prior history, including that of a total of five steroid injections that did not provide lasting pain relief. He reviewed her prior MRIs, EMG, and myelogram/CT and performed a physical examination. He concluded that she had chronic consistent low back pain with no evidence of radiculopathy or segmental lumbar instability. Dr. Bilderbaek did not believe a discography would be appropriate because he did not believe the secondary procedure of either an IDET or a fusion would be of any therapeutic benefit. He further stated “I do not believe that any further treatment would be of any benefit.”
A report from Dr. William Crotwell was also admitted into evidence. Dr. Crotwell reviewed Ms. Cortez’ medical records at the request of the defendant on July 16, 2004. He concluded that there was not enough physical data with objective evidence to substantiate extensive workup such as discogram, discography, or a fusion. He opined that her subjective complaints are greater than her objective evidence.
|8At the conclusion of trial, the judge took the matter under advisement. He later rendered judgment finding the disco-gram performed on August 16, 2005 and spinal fusion performed on October 25, 2005 were reasonable and necessary and directly related to her original occupational injury at East Jefferson General Hospital on September 25, 1998 and awarded the stipulated costs of those procedures, $31,657.84. The judgment also awarded Supplemental Earnings Benefits at the zero earnings rate for the period of October 25, 2005 through January 26, 2006 and all out of pocket expenses in connection with the surgery. The judgment further *712 awarded $6,000.00 penalties and $6,000.00 in attorney fees. The defendant filed a Motion for New Trial that was denied. This timely appeal followed.

AWARD OF THE MEDICAL EXPENSES

On appeal, the defendant lists two Assignments of Error related to the award of medical expenses. The defendant argues that the trial court erred in awarding medical expenses that were not properly submitted to the employer for approval, that were not reasonable or necessary, and were not related to the accident at work. The trial court ruled that the issue of the failure to seek approval for the surgery and testing that preceded it was denied because defendant failed to file the required pre-trial statement.
The Louisiana Administrative Code requires that each party to a dispute for compensation file a pretrial statement ten days prior to the pre-trial conference. La. Admin. Code tit. 40, pt. I § 6005. The code further provides that only those issues listed in the pretrial statement shall be litigated at trial. La. Admin. Code tit. 40 pt. § 6201. Thus, we find the trial judge had the authority to deny the defendant’s claim regarding timely submission.
| ciHowever, the record indicates the claimant had requested payment for the surgery and preceding testing prior to those procedures being performed. The motion for independent medical examination filed by the defendant on August 20, 2004 states “the sole dispute in this matter is as to the medical condition of the Employee and her request for approval of a discogram and surgery.” Accordingly, defendant’s contention that these medical expenses were not properly submitted to the employer for approval is without merit.
Furthermore, we find the record supports the trial court’s finding that the discogram performed on August 16, 2005 and spinal fusion performed on October 25, 2005 were reasonable and necessary and directly related to her original occupational injury at East Jefferson General Hospital on September 25,1998.
Factual findings in a workers’ compensation case are subject to the manifest error or cleai’ly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. For an appellate court to reverse a trial court’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon | ] nreview, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
Ms. Cortez testified that after her injury of September 1998, her legs continued to “buckle” and “give out.” She explained that she began walking with a cane for support due to this problem. This is documented in Dr. Nunley’s records. Ms. Cortez testified that she fell down stairs as a result of her leg giving out. Dr. Nunley testified that this fall did not have a signifi *713 cant impact on Ms. Cortez’ condition. The trial judge stated that he found the testimony of Ms. Cortez to be credible and that of Dr. Nunley to be persuasive. Thus, the finding that the medical treatment was related to the initial injury of September 1998 is supported by the record.
The trial judge further stated that he rejected the findings of defendant’s physician, Dr. Mead, and the state appointed IME, Dr. Bilderback, because although these physicians were orthopedists, they do not practice surgery of the spine.
La. R.S. 23:1123, which provides for the appointment of an independent medical examiner (IME) when there is a conflict in the medical evidence, states that the report of the IME shall be prima facie evidence of the facts therein stated. The courts have interpreted La. R.S. 23:1123 to mean that an IME’s medical conclusions should be given significant weight because the IME is an objective witness. Fritz v. Home Furniture-Lafayette, 95-1705, p. 8 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132, 1136. Nevertheless, the opinion of the IME is not conclusive, and the trial judge must evaluate all of the evidence presented in making a decision as to the claimant’s condition. Jennings Am. Legion Hosp. v. Daigle, 01-621, p. 3 (La.App. 3 Cir. 11/14/01), 801 So.2d 550, 553 writ denied, 01-3294 (La.9/5/03), 852 So.2d 1038. The weight given to the testimony of an |UIME can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other relevant factors. Id. A trial court’s assessment of the necessity of medical treatment pursuant to La. R.S. 23:1203(A) is a factual determination subject to the manifest error standard of review. Ramogasse v. Lafitte Welding Works, 93-682, p. 2 (La.App 5 Cir. 12/13/95), 666 So.2d 1176, 1178.
Dr. Nunley testified that the conservative treatment options prescribed and followed by Ms. Cortez did not alleviate Ms. Cortez’ pain. Dr. Nunley estimated that he has performed approximately 1,000 dis-eograms. He explained that the disco-gram is used to ensure that surgery is being performed at the correct level of the spine. Dr. Nunley knew Dr. Bilderback and explained that while Dr. Bilderback trained as a spine surgeon, he had not performed spine surgery for a number of years, and instead underwent further training as a hand surgeon. Additionally, both Ms. Cortez and Dr. Nunley testified as to the significant improvement in Ms. Cortez’ condition following the surgery. This was. supported by Dr. Nunley’s records. Accordingly, we find no manifest error in the trial court’s finding that the discogram and spinal fusion were reasonable and necessary.

AWARD OF WORKERS’ COMPENSATION BENEFITS

The defendant argues that Ms. Cortez should not have been awarded compensation benefits because the medical treatment that led to her being unable to work was not authorized and/or was unrelated to the accident at work. Our finding that the medical treatment was related to the accident at work renders a discussion of this argument moot.
┴12The defendant further argues that Ms. Cortez’ claim for benefits had prescribed. The trial judge ruled the issue of prescription was denied due to defendant’s failure to file the required pretrial statement. Without making a determination as to the correctness of this ruling, we find the claim for benefits was not prescribed.
*714 The trial judge awarded Supplemental Earnings Benefits at the zero earnings rate to be paid from the date of the spinal fusion surgery, October 15, 2005 until the date Ms. Cortez returned to work on January 26, 2006.
La. R.S. 23:1209(A) provides that a claim for supplemental earnings benefits must be submitted within three years of the last payment of weekly compensation benefits. Ms. Cortez received her last weekly benefit on December 20, 2002. She filed the instant claim for weekly benefits on July 2, 2004, well within the three year time period.
The defendant contends that while the benefits are termed supplemental earnings benefits, they were actually temporary total disability benefits because Dr. Nunley testified that Ms. Cortez was unable to work during this time period. The courts have recognized that certain benefits may be available to a claimant even when the right to other benefits, such as total and permanent disability benefits, has prescribed. See, Bibbins v. Boh Bros. Construe. Co., 99-349, (La.App. 5 Cir. 10/13/99), 746 So.2d 154; Duncan v. State ex rel. DOTD, 556 So.2d 881 (La.App. 2 Cir.1990). Additionally, the employee does not have to be employed in order to receive supplemental earnings benefits. R.S. 23:1221(3)(c)(i). Thus, we find Ms. Cortez’ claim for supplemental earnings benefits was not prescribed.

PENALTIES AND ATTORNEYS FEES

11sThe defendant argues that the trial court should not have awarded penalties and attorney’s fees because defendant had three doctors, one of whom was the IME, who stated the discogram and surgery were not necessary. The claimant has answered the appeal seeking additional attorneys fees incurred in this appeal.
Pursuant to La. R.S. 23:1201(F) and (I), failure to provide benefits shall result in the assessment of penalties and attorney fees. This provision does not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. Id. In construing the term “reasonably controverted” as contemplated by the statute, our courts have found that in order to preclude the imposition of penalties and attorney’s fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfriv-olous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Redler v. Giorlando’s Restaurant Corp., 07-658 p. 7, (La.App. 5 Cir. 2/6/08), 979 So.2d 512, 516, writ denied, 08-0863, (La.6/6/08), 983 So.2d 925.
Awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan v. Coca Cola Bottling Company United, Inc., 04-0100 p. 17 (La.3/2/05), 894 So.2d 1096, 1108. While the benefits conferred by the Workers’ Compensation Act are to be liberally construed, penal statutes are to be strictly construed. Trahan v. Coca Cola Bottling Company United, Inc., 894 So.2d at 1108.
The first mention of getting approval for discography in Dr. Nunley’s office records appears on August 29, 2003. Shortly thereafter, on October 1, 2003, Dr. 114Mead examined Ms. Cortez and rendered a report stating that a discogram would not be of any benefit. On April 19, 2004, Dr. Nunley again recommends discography after which he will make a recommendation *715 for surgery. Dr. Mead examined Ms. Cortez a second time on May 24, 2004, and again stated: “I do not believe that a lumbar discogram is particularly helpful in determining whether lumbar disc surgery is indicated since I do not believe that a fusion is an indicated procedure ...” On July 16, 2004, Dr. William Crotwell reviewed Ms. Cortez’ medical records at defendant’s request and stated she did not need a discogram or discography or surgery. On August 20, 2004, defendant filed a Motion for Appointment of an Independent Medical Examiner. Dr. Bilderback was appointed and examined Ms. Cortez on October 28, 2004 and stated “I do not believe that discography would be appropriate as I do not believe ... a fusion would be of any therapeutic benefit.”
Given the findings by these three physicians that discography and surgery were not appropriate, we find the trial judge committed manifest error in awarding penalties and attorney’s fees. Accordingly, the award of penalties and attorney’s fees is reversed. Likewise, the claimant’s request for attorney’s fees on appeal is denied.

VAGUENESS OF THE TRIAL COURT JUDGMENT

In their final Assignment of Error, the defendant contends the trial court judgment is vague in that it does not specify the rate of supplemental earnings benefits and does not specify the amount of out of pocket medical expenses to be paid.
Our reading of the record indicates the trial court judgment is not vague. During the time period for which Ms. Cortez was awarded supplemental earnings | ^benefits, Ms. Cortez was not able to work. The trial court recognized this and awarded supplemental earnings benefits at the zero earnings rate. The parties stipulated that according to her pre-injury earnings, Ms. Cortez was entitled to the maximum compensation rate in effect at the time of her injury, which was later determined to be $867.00 per week. Thus, according to the trial court judgment, Ms. Cortez is to be paid $367.00 per week from October 25, 2005 through January 26, 2006.
As for out of pocket expenses, Ms. Cortez testified that her out of pocket medical expenses were $100.00 for the myelogram, $450.00 for the surgery, $100.00 for the discogram, and $100.00 for medications. Thus, according to the trial court judgment, Ms. Cortez is to be paid $750.00 in out of pocket medical expenses.
The trial court judgment provides for interest from the date of the signing of judgment. However, LSA-R.S. 23:1201.3 A provides for interest, at the rate in effect on the date the claim for benefits was filed, on all unpaid benefits from the date each benefit was due until the judgment is satisfied. Accordingly, the judgment below is amended to provide for same.

CONCLUSION

For the foregoing reasons, the portion of the trial court judgment awarding medical benefits and supplemental earnings benefits is affirmed, the award of penalties and attorney fees is reversed, and the judgment is amended to award interest from the date benefits were due.
AFFIRMED IN PART; REVERSED IN PART; AMENDED.