# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 13-863

**HARRIS DAVID**

**VERSUS**

**VERMILION SHELL & LIMESTONE CO.,INC.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF VERMILION, NO. 11-05822
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Billy Howard Ezell, and John E. Conery, Judges.

**AFFIRMED.**

**Harry K. Burdette**
**The Glenn Armentor Law Corporation**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Harris David**

**Mark D. Boyer**
**Boyer, Hebert, Abels & Angelle, LLC**
**133 Aspen Square, Ste F**
**Denham Springs, LA 70726**
**(225) 664-4335**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Vermilion Shell & Limestone Co., Inc.**

**EZELL, Judge.**

Harris David appeals a trial court judgment which dismissed his claim for workers' compensation benefits against his former employer, Vermillion Shell and Limestone. Mr. David alleges he suffered a compensable injury on August 30, 2010, when his eighteen-wheeler truck was rear-ended by another eighteen-wheeler truck. The workers' compensation judge found that Mr. David failed to prove by a preponderance of the evidence that he suffered any injury or disability as a result of the accident. For the following reasons, we affirm the judgment of the Office of Workers' Compensation.

## FACTS

Mr. David was employed as a driver for Vermillion Shell and Limestone for approximately three-and-one-half years prior to the vehicular accident on August 30, 2010. On the day of the accident, Mr. David was travelling east on Interstate 10 across the Atchafalaya Basin Bridge. Another truck owned by Averitt Express was also travelling in the same direction. Apparently the Averitt Express driver fell asleep at the wheel and rear-ended the vehicle driven by Mr. David. The accident broke the rear glass, blew out a tire, and broke a rim on Mr. David's vehicle.

After the accident, Mr. David drove to Abbeville to have the tire and glass repaired. Mr. David then went home to get some rest; after which, he got up and completed the delivery job he was attempting before the accident. Mr. David did not seek medical treatment and continued working for Vermillion Shell and Limestone after the accident for approximately ten months.

On June 17, 2011, Cody Miller, Mr. David's supervisor, reprimanded Mr. David for texting on his phone while driving his truck. Mr. David left work and

never returned. He filed a claim for unemployment benefits which was denied because he left his job without good cause.

Mr. David sought medical treatment for the first time after he left employment with Vermillion Shell and Limestone. He initially sought treatment with his family doctor who does not treat workers' compensation injuries. Mr. David then saw an orthopedic surgeon, Dr. Michel Heard, on July 6, 2011. Mr. David told Dr. Heard that he was not initially hurting after the accident but started having pain a couple of days later. The pain progressed to the point that he had to stop working. Mr. David reported neck and shoulder pain that radiated into his left arm. He also complained of low back pain that radiated into his left paralumbar area and left posterior buttocks.

After an examination, x-rays, MRIs, and five visits, Dr. Heard noted some preexisting changes. An MRI indicated a cervical herniation at C6-7, which Dr. Heard opined was caused by the vehicular accident on August 30, 2010. Dr. Heard further opined that the accident made Mr. David's neck and low back pain symptomatic.

Mr. David filed a disputed claim for compensation on July 8, 2011, alleging that the rear-end collision caused his injuries. A hearing was held on July 27, 2012. The workers' compensation judge found that Mr. David failed to prove his case by a preponderance of the evidence and dismissed his claim. Mr. David then filed the present appeal.

## COMPENSABLE ACCIDENT

Mr. David asserts that the workers' compensation judge was clearly wrong in finding that he failed to meet his burden in proving that he suffered an injury as a result of the August 30, 2010 work accident. Mr. David argues that the workers'

compensation judge placed too much emphasis on the fact that he did not seek medical treatment until ten months after the accident. He argues that delays or gaps in medical treatment have been found by the courts to be of little significance.

In written reasons for judgment, the workers' compensation judge noted several inconsistencies in Mr. David's testimony. She observed that Mr. David had admittedly concealed the fact that he suffered with high blood pressure from his employer, noting that high blood pressure can prevent the issuance of a commercial driver's license. She also noted that Mr. David had not disclosed a previous workers' compensation injury to Dr. Heard. Furthermore, she observed that Mr. David told Dr. Heard he quit work due to pain as opposed to quitting over a reprimand. Based on these observations, the workers' compensation judge did not find Mr. David to be very credible.

A workers' compensation judge's findings of fact are reviewed under the manifest error/clearly wrong standard of review and the findings will not be set aside unless clearly wrong after reviewing the record in its entirety. *Dean v. Southmark Const.*, 03-1051 (La. 7/6/04), 879 So.2d 112. When there is a conflict in testimony, reasonable evaluations of credibility and inferences of fact will not be disturbed upon review even though the appellate court may disagree. *Id*. Furthermore, when factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of the trier of fact, "for only the factfinder can be aware of the variations in demeanor and tone that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

An employee must establish a causal connection between the work-related accident and the resulting complained-of disability to prove an entitlement to

workers' compensation benefits. *Ashworth v. Administaff, Inc.*, 10-318 (La.App. 3 Cir. 10/6/10), 48 So.3d 1178. The employee's burden is by a preponderance of the evidence. *Id.* "[I]f the probability of causation is equally balanced based on the evidence presented, then the employee has not carried [his] burden of proof." *Id.* at 1181.

In addition to the inconsistencies noted by the workers' compensation judge, Mr. David also admitted that in 1991 he fell down some stairs while working for the Louisiana Department of Transportation and Development. As a result of the accident, he suffered a back injury and was taken off work for two years. He also filed a workers' compensation claim at that time. Mr. David testified that he told Dr. Heard about the 1991 accident, but Dr. Heard denied knowledge of any previous accident in his deposition. Mr. David admitted he did not report any previous injuries on Dr. Heard's questionnaire. He also denied previously having any type of x-ray testing to Dr. Heard. However, admitted he had a CT scan in 1991 after his fall. He testified that he did not think the 1991 accident was relevant. He agreed that he told Dr. Heard he stopped working in June 2011 because he was in too much pain while admitting that he actually quit after he was approached about texting while driving.

Mr. David also testified that he does not drink. On further questioning, he agreed that he talks about drinking on Facebook but stated that he is only joking. Lonnie Abshire, Mr. David's first cousin, disagreed with Mr. David and testified that Mr. David likes to drink.

Mr. David argues that he is entitled to a legal presumption of causation. This court has explained the claimant's burden of proof and application of the legal presumption as follows:

4

"An employee in a worker's compensation action has the burden of establishing a causal link between the work-related accident and the subsequent disabling condition." *Miller v. Roger Miller Sand, Inc.*, 94-1151, p. 6 (La.11/30/94), 646 So.2d 330, 334. An employee's disability is presumed to have resulted from the accident if before the accident, the injured employee was in good health, but commencing with the accident, symptoms of the disabling condition appeared and continuously manifested themselves afterwards. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985). However, the presumption requires either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Id.

*Marks v. 84 Lumber Co.*, 06-358, pp. 3-4 (La.App. 3 Cir. 9/27/06), 939 So.2d 723, 727.

The workers' compensation judge found that Mr. David was not entitled to the presumption of causation because the presumption requires an immediate onset of symptoms after the accident, or at least close in time to the accident, with a continual manifestation. The workers' compensation judge explained that the accident becomes a diminishing possibility as an explanation when ten months intervene between the accident and the complaints and disability.

While Mr. David and his wife testified that he suffered with neck pain after the accident and had to take an extreme amount of Ibuprofen to alleviate the pain, the workers' compensation judge was very adamant that she did not place stock in the testimony. The workers' compensation judge explained that "[i]n order to accept that an injured worker can work his full duty without restriction, without complaint, and without medical treatment for 10 months, some higher degree of credibility and corroboration would be expected than was observed by the [workers' compensation judge]."

Only Mr. David and his family offered any proof of a disability following the accident. Mr. David testified that he started having headaches two to three days after the accident and his left shoulder started bothering him. As long as he was taking Ibuprofen, he could manage. His pain was never below a nine out of ten every day. Mr. David's wife Cynthia testified her husband had a headache when he got home after the accident. She testified that he would take twenty Ibuprofen pills at a time, every four hours, to relieve the pain. He did this every day after the accident. Yet, he never sought medical treatment during this time period. Mrs. David explained that her husband continued working because they were experiencing financial difficulties due to a repayment plan bankruptcy. Mr. David's daughter and son-in-law, who live with him, testified that he was fine before the accident and in a lot of pain after the accident.

Mr. David's supervisor and several co-workers testified at the hearing. Testimony revealed that Mr. David never complained about his neck or back hurting while working. Mr. David had to use a manual tarp to cover the load on his truck. He would have to operate a hand crank to get the tarp in place every day he had load to deliver. He coworkers saw him working this hand crank by himself on many occasions. Mr. David was also responsible for maintenance on his vehicle like changing the oil or tires. Mr. David would also sometimes drive five to six hours at a time, depending on where he had to deliver materials. On occasion, Mr. David would run the front-end loader and help move culverts. Just before Mr. David quit, he was working full time with overtime.

Mr. David's testimony about his injury, his previous back injury, and the circumstances involving the timing of his workers' compensation claim all cast serious doubt on Mr. David's testimony. Other than Mr. David's own self-serving

6

testimony and that of his family, there is no other testimony that Mr. David suffered with such serious neck problems after the accident. While a co-worker testified that he saw Mr. David taking Ibuprofen pills all the time after the accident, he also saw him taking Ibuprofen before the accident. Even though Mr. David and his wife testified that the pain was so bad he had to take twenty Ibuprofen pills every four to six hours every day, Mr. David continued to work after the accident for ten months. He had to drive long hours, change an occasional tire, hand crank the tarp on the truck, and even move some pipe. He never complained to anyone at work that his neck hurt. It was not until Mr. David quit his job and was denied disability that he decided to seek medical attention. Due to his lack of credibility, it is possible that some intervening cause could have occurred in the ten months after the accident that Mr. David failed to disclose which caused his injury. It is also possible that he was in pain before the accident since a coworker observed him taking Ibuprofen pills before the accident. We find no manifest error in the workers' compensation judge's decision that Mr. David failed to establish that he suffered an injury as a result of the accident.

The judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Harris David.

**AFFIRMED.**